**JUSTICE, Habeas Corpus, In re.**

Common Pleas Court, Licking County.

No. 42525. Decided February 27, 1956.

Kenneth Little, Columbus, on behalf of petitioner.
Donald M. Hamilton, Jr., Columbus, on behalf of respondent, Madelon Boyle.

## OPINION

By HOLTSBERRY, J.

JoAnn Justice, now 17 years old, resides with her aunt, Madelon Boyle at Summit Station, Licking County, Ohio. She has been with her aunt the last 12 years. JoAnn has a twin sister, Lee Ann, who lived with her sister and aunt at the Boyle home until June, 1955, when she left the Boyle home and began living with her father, Dane Justice, at Fairborn, Greene County, Ohio. Dane Justice is a Colonel in the United States Air Force.

The father filed his petition herein asking that a writ of habeas corpus issue discharging JoAnn to his custody. Said petition is grounded upon alleged illegal restraint of liberty and detention without legal authority.

Said aunt answered the writ in writing denying the claim of illegal restraint and detention and raised the issue of the welfare of JoAnn. The petitioner at the commencement of the trial denied the allegations of Mrs. Boyle. The case was tried upon the illegal restraint issue and further upon the issue of the welfare of the child.

The evidence disclosed that shortly after the birth of JoAnn, her mother died. When the twins were five years old, in 1943, Dane Justice and said aunt entered into an oral agreement concerning the possession and rearing of the girls. The aunt refused to take them temporarily, saying that she did not want to become attached and have them taken away after a few years, but that she would raise them as her own. The father agreed to this and further that he would provide partial support. Pursuant to this agreement, Mrs. Boyle and her husband, Earl, took possession of said girls. Over the years the Boyles have displayed an unusual interest in the rearing of these children. To better the environment for the rearing of the children, they even changed neighborhoods. Mrs. Boyle made clothing for the girls, gave them a practical training in home responsibility, kindled an interest in religion and education and generally provided an affirmative climate conducive to future happiness and good citizenship. JoAnn addresses Mrs. Boyle as "Mommy."

Her habits, associations and attachments resulting from her living at the Boyle home the last 12 years are most commendable. She is an unusually good student at the Summit Station High School, where she will graduate in June. She has been active in church work, as well as displaying characteristics of industry and thrift and by working part-

time, has saved money to assist her in pursuing higher education when she enters Ohio State University, where she plans to study journalism.

This young lady displayed unusual poise on the witness stand, expressing her love, respect and gratitude for the Boyles. She stated she believed it would be detrimental to her life emotionally and in other ways for her father to force her to go home with him at this time.

Mrs. Boyle has not, and does not at the present time, refuse to let JoAnn go to her father if this be her wishes. She has not denied reasonable visitations and there is no evidence of illegal restraint.

It was on December 4, 1955, that the father first indicated he wanted JoAnn to live permanently with him. During certain periods the interests of the father left much to be desired, particularly during the period of matrimonial unrest resulting from a second marriage. Petitioner is now married to his third wife, who works at the air force base practically the same hours as that of the Colonel.

Abandonment need not be total in scope to reflect upon the best interests and welfare of a child. There can be an abandonment with respect to future welfare in spite of partial payment and support and some visitations, where under the circumstances a father contracts away certain rights, accepts and complies with such contract, and where love, attention and interest has been unreasonably absent.

The record also discloses that at one time the father expressed a desire and even took some steps to have the Boyles legally adopt the girls.

Petitioner has utterly failed to prove any illegal restraint of liberty and detention without legal authority. In fact, the evidence clearly establishes the facts to be otherwise.

Concerning the question of JoAnn's welfare, this Court is positively of the opinion that it would best be served by possession remaining in the aunt. With respect to the modern trend of legal authorities on such matters this Court has reviewed many cases.

Possession is a word which is ambiguous in meaning. It is invariably used to describe actual and constructive possession, which are so often shaded into one another that where one ends and the other begins is often difficult to determine. Possession, where the human element and best interests of a child is concerned must be considered in the light of many things; past, present and future environmental influences upon the individual, the probability of the child's individual characteristics and tendencies being favorably developed or thwarted; and the child's maturity, or lack thereof, to wisely choose, under existing circumstances and those likely to develop, the surroundings and persons which will promote and insure its best interest and welfare. Rules and guides laid down in such matters must ever be flexible because inevitable changes from generation to generation effect the living of the individual. Time changes but fundamentally people do not.

Sometimes a parent has by act and word transferred custody to another and in such cases, where the custodian is, in every way, a proper person to have the care, training and education of the child, and where the court finds its social, moral and educational interests will be best promoted by not being transferred, the court will treat it as lawful. (Clark v. Boyer, 32 Oh St 299.)

A father may delegate or abandon or be deprived of his authority over his child, and the public policy does not forbid this, but in many cases requires it. (Day v. Everett, 7 Mass., 144.)

After a state of things has arisen which cannot be altered without risking the happiness of a child, where affections have jelled, the better opinion is that a parent is not in a position to have the interference of a court in his favor.

Questions of rightful custody have been made in proceedings in habeas corpus in this country where alleged illegal restraint was the chief question for consideration. The spirit of the law is revealed in several of the following cases:

The Supreme Court of Delaware in the Bratton case, reported in American Law Reg. (N. S.), Volume 15, 359, which was a contest between father and grandmother for custody of children, the court held that the prima facie right of the father is not absolute and unqualified, but may be forfeited or relinquished under certain circumstances.

In State v. Smith, 6 Greenlief, the holding was that circumstances could alter the father's right to claim children as a matter of right.

A given state of attending facts could justify a holding that a parent relinquished the right of custody by parol. (See **Gishwiler v. Dodez, 4 Oh St 615.**)

An English case was in harmony with our American decisions. In Lyons v. Blenkin, 245, the lord chancellor states: "It is always a delicate thing for a court to interfere against parental authority, yet we know that the courts do it in cases where the parent is capriciously interfering in what is clearly for their benefit." In reaching his conclusion he placed great weight upon formed habits, associations and attachments.

Hurd, in his work on Habeas Corpus asks the logical question how a court could pronounce that custody held under a fair agreement with a parent and not adverse to the welfare of the child, could be an illegal restraint.

**In Re Tilton, 161 Oh St 571,** the court held that an unwed mother by surrendering possession of her child to blood relatives and by executing a written instrument surrendering possession could not regain possession by habeas corpus where the child's best interests required otherwise. And where it was found the mother's acts amounted to abandonment.

The serious question raised in the Tilton case was whether the Ohio statutes permitted the Common Pleas Court to enter an order against petitioner in a habeas corpus proceedings and thus, for practical purposes, deny the mother custody of her child. The Supreme Court said in answering this that it is the law of Ohio that the welfare of a child is first to be considered by a court. The Court further spoke of certain legislative acts of Ohio as commendable which deal with care and custody of children, but said * * * "but in legislating the General Assembly cannot be said to have disregarded the fundamental principle above stated." (The principle referred to is stated in the preceding paragraph of the Supreme Court opinion as follows: "In all cases of controverted right to custody the welfare of the minor child is first to be considered.")

In those instances where the Legislature of Ohio has acted with reference to custody but limited the section as for example by specifically

mentioning children of parties in divorce cases, if the General Assembly had intended the provision to extend to all cases where custody and control of children were involved, it would naturally have said so.

I am of the opinion that the opinion and wishes of JoAnn Justice should be given serious consideration and effect under the facts of the instant case. Although her wishes and desires are not mandatory, they reveal that her contentment, emotions and future depend largely upon the compliance therewith. True, the statute giving the child the right to elect between parents under the domestic relations statutes would not be applicable herein, however, a consideration of the election statute, together with a study of the content of other Ohio legislation or legislative acts pertaining to custody and possession of minors reveals an intent on the part of the Legislature like the courts, to give much weight to the wishes and desires of children, particularly in their late teen years, where their interests and welfare are at stake.

Even though the statute permitting a minor over 14 years to choose between the parents is not binding in the instant proceedings, where the possession of a child over 14 years has been voluntarily relinquished by a father to a blood relative under an agreement where the possession is not to be taken away or disturbed and where the child has further been properly reared and loved for a number of years, and is content and the evidence further shows the child is well adjusted, the wishes of the child in the opinion of this Court raises a presumption that the child's best interest will be served by not being changed, in the absence of a showing that such change would be beneficial to the child's welfare.

In Sheely v. Sheely, 88 New Hampshire, 223, it was held that a court without jurisdiction to make an order designating a permanent custody for a child may have jurisdiction to make a temporary order of custody as incidental to its power to administer the summary remedy of habeas corpus.

Ordinarily the basis for the issuance of a writ of habeas corpus is an illegal detention, but in the case of a writ sued out for the detention of a child, the chief concern of the court should be the welfare of the child. (Barlow v. Barlow, 141 Georgia, 535; Bellmore v. McCloud, 189 Wisconsin, 431, State ex rel Jones v. West, 139 Tennessee, 522, Buchanon v. Buchanon, 170 Virginia, 458.)

A court is not bound to deliver a child to a parent upon the claim of mere legal right of a parent, but should in the exercise of a sound discretion and after careful consideration of the facts leave it where the welfare of the child at the time appears to require. In short the primary object of habeas corpus, as applied to children, is to determine in whose custody their best interests will probably be advanced. (25 American Jurisprudence [Habeas Corpus] page 205; **20 O. Jur. [Habeas Corpus] page 465.)**

**In Re Duffy, 78 Oh Ap 16,** is not authority on the instant question as careful examination of the court's opinion reveals in paragraph 7, second sentence, "the welfare of the child was not made an issue in this case."

The instant case must also be distinguished from those cases between parents concerning children where the statute concerns itself with in-

stances where the court finds "neither parent is a suitable person to have custody."

After careful consideration of this case, this Court finds that first, there has been no illegal restraint as alleged, and therefore the application for writ of habeas corpus should be and hereby is denied. Second, that since an issue has been made as to the welfare of JoAnn Justice, this Court can reach no other conclusion than that the best interests of said girl requires that her possession remain with her aunt.