200

(No. 2957—Decided November 7, 1970.)

Juvenile Division, Common Pleas Court of Preble County.

*Mr. Herbert Wagers*, for petitioner.
*Messrs. Clayman, Jaffy & Taylor*, for respondents.

ZIEGEL, J. The case of Daniel Taylor Baker, age fifteen, and Rebecca Sue Baker, age nine, is once again be-

fore this court, this time on a petition for a writ of habeas corpus filed by their father and alleging that these children are being unlawfully restrained of their liberty by T. C. and Lydia Rose, their maternal grandparents. Previously, on May 21, 1970, this court rendered its opinion on a dependency-neglect complaint filed by T. C. Rose, primarily on the authority of *In re Kronjaeger*, 166 Ohio St. 172, that as of the date of the hearing these children were neither dependent, nor neglected, and therefore as required by R. C. 2151.35, ordered that complaint dismissed. At the time of that hearing, and to the present time these children were in the physical custody of their maternal grandparents who refuse to turn them over to their father.

The writ was returned as ordered, the grandparents appeared and answered that these children were not restrained of their liberty, that their custody was acquired by virtue of the father's abandonment and forfeiture of any custody right to said children, and that their best interests require that the writ be denied. At the trial on the issues, in addition to the taking of testimony, it was stipulated that that transcript of testimony taken at the dependency-neglect hearing could be considered in toto by the court.

Respondents have had these children in their home since the fall of 1962 when their parents separated and their mother brought them there, except for a period during the summer of 1963 when they lived with their mother in another home owned by respondents. From the fall of 1962 to late 1963 or early 1964, Russell Baker, the petitioner, lived in the vicinity of respondents, but did not see much of his children during that period. In December 1962, he was found guilty of contempt of court by the Preble County Common Pleas Court for failure to comply with orders issued in connection with a pending divorce action relative to the support of his children. Sentence in that case was suspended on condition that he make the payments there ordered, but later on in the same month he was brought into court on a capias for failure to make these payments. In 1963 the respondents, these children, and their mother lived in Butler County, and in that year the

petitioner was found guilty of non-support in that county and was sentenced to the Cincinnati Workhouse, which sentence was suspended on condition that he support these children. According to T. C. Rose, from the fall of 1962 to May 1, 1969, petitioner paid a total sum of $480.00 child support.

In late 1963 or early 1964 petitioner left this part of the country and went south. His children did not see him again until February 1967, and during that period, although according to his own testimony except for a period of one month he was regularly employed he did not send any money to either respondents or his wife for child support, or anything at all to these children, or make any effort to contact any of them. It does not appear that the Roses, or even one of his sisters, know where he was during part of this period. In December 1966, petitioner obtained a divorce from the mother of these children in Lee County, Florida. In spite of the fact that the Roses at least during the period of his marriage to their daughter have always lived in the same general vicinity, and in spite of the fact that at that time Mr. Rose had been working for the same company for fourteen years, the decree there entered indicated that the address of petitioner's wife and children was unknown.

In February 1967, the mother of these children died in a fire in which these children were also injured. Petitioner learned of this tragedy from a sister who lived in the vicinity, and immediately came from Florida and attempted to gain their custody. To forestall this attempt, the respondent here filed a dependency-neglect complaint in the Warren County Juvenile Court, which was eventually disposed of, after certification to this court, as indicated.

The general rule is that a "parent has a right to the custody of his child against all other persons unless and until it is shown that the parent has relinquished this right by contract, forfeited it by abandonment, or lost it because of his unfitness or inability to provide a suitable home for the child." 41 Ohio Jurisprudence 2d 324, paragraph 20. *In re Duffy*, 78 Ohio App. 16. In the case at bar there is no

form of contract in evidence. Under testimony taken in the dependency-neglect case, this court has already held that the petitioner is at the present time neither unfit nor unable to provide a suitable home for his children. The issue thus is whether the petitioner has forfeited his parental rights by abandonment, so that the best interests of these children require that their custody be continued in the respondent maternal grandparents.

"Abandonment" of a child has been defined as any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. *In re Masters*, 165 Ohio St. 503; *Clark* v. *Bayer*, 32 Ohio St. 299. From the testimony unquestionably the petitioner abandoned these children from at least January 1964 to February 1967. By such abandonment the court finds that he has forfeited any preference to which he might be entitled by law by virtue of being the father of these children.

Such forfeiture, however, does not automatically deprive him of the right now to be considered as an appropriate person to whom the custody of these children might be granted. The forfeiture of his parental priority simply means that any presumption that a child's interests are normally best served by being in the custody, care and control of a parent has been rebutted. At this point the court is permitted to consider what is for the best interests of the child without reference to priorities. *In re Tilton*, 161 Ohio St. 571.

In the case at bar, the only steady diet of care these children have had since 1962 has been furnished by the respondent grandparents. That that care has been excellent and above reproach has been well established. While the father may now have demonstrated his fitness and ability properly to maintain and support these children, to the extent that this court could without worry as to future consequences award these children to him, nevertheless this court may also in considering what is presently for the best interests of the children in question refuse to aid him in obtaining custody of his children, and may treat the

present physical possession of these children by the grandparents as lawful. Paragraph 5 of the headnote in *In re Justice*, 72 Ohio Law Abs. 323, describes very well the situation here: "After a state of things has arisen which cannot be altered without risking the happiness of a child, where affections have jelled, the better opinion is that a parent is not in a position to have the interference of a court in his favor."

Accordingly, this court finds that the petitioner is not unlawfully deprived of the custody of his children by reason of having forfeited his paternal right to custody through abandonment and that the best interests of these children require that they remain with their maternal grandparents, respondents herein. Therefore, this court refuses to lend its assistance to this father in obtaining that custody.

At this point there is a void in the case law both as to the legal effect of the denial of a writ of habeas corpus for the custody of a child and as to the collateral authority of the court to issue specific orders as to legal custody, obligations to support, and rights of visitation. If the court in a habeas corpus proceedings brought by a parent refuses to take a child from a respondent, does such refusal automatically confer the legal custody of such child upon the respondent? If it does not, would any residual parental rights permit such parent to resort to self help through child stealing or kidnapping without incurring any criminal sanctions? Further, if it can be said that the denial of a writ of habeas corpus does automatically confer legal custody upon the respondent, what then happens to a parent's obligation to support and his possible right of visitation? Likewise, does the court as is the general rule in other cases where custody of children is involved maintain a continuing jurisdiction so that it may intervene upon motion at some future date should the interests of the child require it?

The statutes furnish little help in answering these questions. A proceedings in habeas corpus for the custody of a child is basically brought under R. C. 2725.01, which

provides that "Whoever is unlawfully restrained of his liberty, or *entitled to the custody of another, of which custody such person is unlawfully deprived,* may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment, restraint, or deprivation." If it is determined that the petitioner is unlawfully deprived of the custody to which he is entitled, none of the above questions arise. Custody is simply turned over to him. The quoted statute, however, gives no answers where the deprivation is not unlawful. Just to dismiss the petition for a writ leaves these questions undetermined.

R. C. 2725.02 provides that "The writ of habeas corpus may be granted by the supreme court, court of appeals, court of common pleas, probate court, or by a judge of any such court." As to children, this section was partially repealed by implication with the enactment of amended R. C. 2151.23, effective on November 19, 1969. Paragraph (A) thereof provides, insofar as habeas corpus for the custody of a child is concerned that "(A) The juvenile court has exclusive original jurisdiction under the Revised Code. * * * (3) to hear and determine any application for a writ of habeas corpus involving the custody of a child." R. C. 2151.01, as effective also on November 19, 1969, provides that "The sections in R. C. Chapter 2151., with the exception of those sections providing for the criminal prosecution of adults, shall be liberally interpreted and construed so as to effectuate the following purposes: "(A) To provide for the care, protection, and mental and physical development of children subject to R. C. 2151. * * *" R. C. Chapter 2151.23, further provides: "(A) The juvenile court has exclusive original jurisdiction under the Revised Code: * * * (2) To determine the custody of any child not a ward of another court of this state. * * *"

Since under the statute quoted above the juvenile court has exclusive original jurisdiction "to hear and determine any application for a writ of habeas corpus involving the custody of a child," any child involved in the application for a writ of habeas corpus is "subject of R. C. Chapter 2151." Accordingly, this court concludes that it is empower-

ed even in a proceedings in habeas corpus to adjudicate fully as to the needs of the child or children there involved. To dismiss the petition for habeas corpus because of a finding that the deprivation of custody is not unlawful without further orders and thereby make it necessary for either the petitioner or the respondent to bring a further action to determine custody and allied questions under R. C. 2151.-23 (A )(2), in order to obtain a complete determination of all the problems would add an unnecessary burden to the litigation. The same parties are already before the court.

It will, therefore, be ordered that Daniel Taylor Baker and Rebecca Sue Baker be placed in the temporary custody of the respondents herein, their maternal grandparents, T. C. and Lydia Rose, subject to the continuing jurisdiction of the court to issue such further orders as their future best interests may require. Sufficient specific testimony on the issue of support payments and visitation privileges not having been received at the hearing, the determination of these matters will be deferred until the additional evidence has been received.

*Judgment accordingly.*