IN RE CONNOLLY.

(No. 74AP-368—Decided December 31, 1974.)

*Harry Lewis Co.*, L. P. A., for appellee Charlie C. Ray, Jr.

*Mr. Robert E. Sexton*, for appellant Linda Bob Connolly.

WHITESIDE, J.   Defendant appeals from a judgment of the Franklin County Court of Common Pleas, division of domestic relations, awarding visitation rights to the putative father of her illegitimate child, and raises two assignments of error as follows:

1. "Appellant submits as her first assignment of error that the order of the trial court allowing visitation of the illegitimate child by the putative father is contrary to law where the putative father is a married man with a family of his own and where the mother of the child has married a man who has assumed the duties of a fulltime father of the child."

2. "Appellant submits as her second assignment of error that the order of the trial court directing visitation by the putative father is not supported by the weight of the evidence."

The parties, although never married to each other, are

the father and mother of a child born October 11, 1972. Plaintiff was married at the time and admits that he is the father of the child. The parties lived together for a period of one month shortly after conception and again for a period of four months, two months before and two months after the birth of the child. At those times, plaintiff had a divorce action pending which was subsequently dismissed. At various times, plaintiff told defendant that he planned to marry her as soon as he could obtain a divorce from his wife. Plaintiff also made various payments to defendant on a regular basis for about a year, including a period both prior to and subsequent to the birth of the child. Plaintiff also paid the major portion of the purchase price of a new car for defendant. Eventually, however, plaintiff decided to remain with his wife rather than divorcing her and marrying defendant. However, with the full knowledge and consent of his wife, plaintiff desired full custody of the illegitimate child. Defendant was married in January 1974.

This action was commenced in March, 1974, by plaintiff, seeking custody of the illegitimate child, of which he alleges he is the natural father. The complaint makes no allegation that defendant is not fit to have custody of the child but, rather, merely alleges that plaintiff ''is best able to care for the child.''

The Juvenile Court ordered that custody of the child remain with the mother, but granted the putative father; plaintiff, visitation rights, although such rights were not expressly requested by the complaint.

The mother of an illegitimate child is its natural guardian and has the legal right to custody, care, and control of such child superior to the right of the natural father, or of any other person, and is legally responsible for the care and support of the child. *In re Gary* (1960), 112 Ohio App. 331, and *In re Gutman* (1969), 22 Ohio App. 2d 125; see, also, annotation 98 A. L. R. 2d 417.

In *Gutman*, the First District Court of Appeals stated, at page 129:

''We conclude that without evidence to warrant a finding that the mother of an adulterine bastard is unfit, that

such child is dependent or neglected within the purview of law, or that the best interests of the child require that it be taken from her, a Juvenile Court cannot deprive her of custody of such child.''

In *Gary*, it is stated in the second paragraph of the syllabus that:

''There is a presumption that the best interests of a bastard child require it to be in its mother's custody, and the burden is upon the person disputing such mother's right to custody to prove that such child should not be in its mother's custody.''

It is doubtful that the complaint stated a claim for relief with respect to custody of the child, since it contained no allegations that, if proved, would have justified the Juvenile Court to have taken the child from defendant, its natural guardian and custodian. On the other hand, an admitted father of an illegitimate child has a right to custody of that child superior to everyone except the mother. *French* v. *Catholic Community League* (1942), 69 Ohio App. 442. Of course, the rights of both natural parents cease upon adoption, and the consent of only the mother of an illegitimate child is a requisite to adoption under R. C. 3107.06(B)(1). The basic issue before us, however, is whether the admitted father of an illegitimate child can be granted visitation rights with that child over the objections of the mother and natural guardian and custodian of the child. Plaintiff contends that to deny him visitation with his illegitimate child would be denying him equal protection of the law since the father of a legitimate child in the custody of its mother from whom he is divorced has a right to such visitation. Plaintiff relies upon *Stanley* v. *Illinois* (1972), 405 U. S. 645, contending: ''The real thrust of the decision is that the natural father of a child has certain rights and duties toward his minor child, and it is irrelevant whether the natural father and mother were ever married.''

Stanley had lived with a woman intermittently for eighteen years, during which they had three children but were never married. The mother died, and, under Illinois law, the children became wards of the state, and Stanley, the father of the illegitimate children, was not entitled to

a hearing to determine whether he could have custody of the children, being conclusively presumed by Illinois law to be unfit to have custody. The Supreme Court held such law to be unconstitutional, denying due process of the law to Stanley. Four justices further found that Stanley had been denied the equal protection of the law. However, the Illinois result would not have occurred in Ohio under the rule of *French, supra.* The United States Supreme Court has held that a state may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded legitimate children and has held that illegitimate children cannot constitutionally be deprived of maintaining a wrongful death action for the death of their mother, nor the mother for the death of an illegitimate child. *Levy* v. *Louisiana* (1968), 391 U. S. 68; *Glona* v. *American Guarantee & Liability Ins. Co.* (1968), 391 U. S. 73. The United States Supreme Court has also held that illegitimate children cannot constitutionally be denied the right to be supported by their natural fathers. *Gomez* v. *Perez* (1973), 409 U. S. 535. However, the Supreme Court also has stated that there are instances where a state can treat illegitimate children differently from legitimate children. *Labine* v. *Vincent* (1971), 401 U. S. 532. In *Labine,* the Supreme Court upheld a statute differentiating between legitimate and illegitimate children with respect to the rights of intestate succession to the estate of their natural father.

The issue before us is the subject of an annotation in 15 A. L. R. 3d 887, entitled, "Right of Putative Father to Visit Illegitimate Child." The annotation indicates that most courts which have considered the issue have found that, under proper circumstances, the father of an illegitimate child should be awarded visitation rights with that child.

A putative (and admitted) father of an illegitimate child may be entitled to visitation with his child where there has been a long standing family relationship established, although without benefit of marriage, between father, mother, and child, followed by the separation of the father and mother, with custody of the child remaining in the mother. However, the real issue under such circumstance is

not so much the *rights* of the putative father as it is the best interests of the child. Under such circumstances, it may well be presumed, in the absence of evidence to the contrary, that it would be in the best interests of a child to continue, by visitation, a father-child relationship to which the child has become accustomed through living with his natural father and mother in a family relationship even though such is without the benefit of wedlock. See *Stanley, supra,* at page 651, where it is stated: "Nor has the law refused to recognize those family relationships unlegitimized by a marriage ceremony. * * *"

However, a putative father, even though he admits paternity of an illegitimate child, is not entitled to visitation rights with such child over the objection of the mother, who has the legal right to custody, unless the putative father clearly establishes that such visitation would be in the best interests of that child. The record in this case reveals no evidence that visitations by plaintiff with the illegitimate child would be in the best interests of that child. Rather, all of the evidence upon the issue is to the contrary. Even if that evidence is not accepted by the trial court, there remains no evidence presented by plaintiff to support a finding that it would be in the best interests of the child to have visitation rights with plaintiff; nor did the trial court so find.

An unwed father does not have a constitutional prerogative to all the rights with respect to his illegitimate children that a father divorced or separated from the mother has with respect to their legitimate children born of their marriage. Each case must be determined upon its own circumstances, and consideration must be given to a *de facto* family relationship of long-standing existence between father, mother, and child, even though not legitimized, or made *de jure,* by marriage. Here, there is no evidence of such a family relationship. It is true that the parties lived together for a period of two months before and two months after the birth of the child, at a time when plaintiff had pending an action for divorce from his wife, and the parties planned to be married when the divorce was granted. However, the circumstances have changed. Plaintiff has return-

ed to his wife and is living with her, and she is quite willing to accept his illegitimate child. Defendant is now married, and her husband is apparently willing to fulfill the father. role with the child.

The granting of visitation rights to the father of an illegitimate child is warranted under unusual circumstances, but such should not be granted as a matter of course and should never be granted in the absence of evidence justifying a finding that visitation would be in the best interests of the illegitimate child. Although it is not phrased within the language of our determination and may contain some misleading factual statements, such as that plaintiff has a family of his own, we find the first assignment of error to be well taken with respect to the basic issue raised. Likewise, for the same reasons, the second assignment of error is well taken.

Subsequent to the oral argument, plaintiff filed a motion, seeking to have the record herein include "the report of the Juvenile Court investigator." Since this was an original action in Juvenile Court, Civ. R. 75 (D) would not be directly applicable, and there is no indication Juv. R. 32 is applicable. The record does not indicate that any such investigation was ordered, received or considered by the trial court. Furthermore, in view of the conclusions we have reached herein, it does not appear that any such investigation, not having been introduced in evidence, would affect the result, especially since the request was not timely made. The motion is overruled.

For the foregoing reasons, both assignments of error are sustained, and the judgment of the Franklin County Court of Common Pleas, division of domestic relations, juvenile branch, is affirmed insofar as it found the lawful custody of the minor child to be in the defendant, is reversed in all other respects and is accordingly modified, and this cause is remanded to that court for execution.

*Judgment affirmed in part, reversed in part, modified and remanded.*

STRAUSBAUGH and REILLY, JJ., concur.