NELSON, APPELLANT, *v.*
NELSON, APPELLEE.

(No. 82AP-299—Decided May 5, 1983.)

*Messers. Milligan, Milligan & Milligan* and *Mr. Fred J. Milligan, Jr.,* for appellant.

*Messrs. McGuire, Fenstermaker, MacAulay, Clark & Dodd* and *Mr. James E. Dodd,* for appellee.

REILLY, J. The record indicates that the trial court granted defendant, Ronald E. Nelson, custody of the two children born during the marriage of the parties. The court also ordered plaintiff, Judith C. Nelson, to pay child support.

The trial court in its decision stated that defendant was not the biological father of one of the children, Scott Nelson. The court, however, determined that defendant had the legal rights and obligations of a parent because the child was born during the marriage and was considered by defendant as his child. The court in its decision also wrote the following:

"If the Courts are holding that the husband is the father of the child in the above fact situation, certainly a similar holding should be made in the case at bar where the facts are even stronger in favor of a holding in favor of the husband being held to be the father of the child. A portion of the theory of this kind of decision is the father's role in standing in loco parentis to the child.

"In the case at bar the father accepted his wife's adultery in which the child was conceived; has acted in the role of father for 12 years and is still doing so by acting as the temporary custodian in this action and seeking the permanent custody. The child has not even been made aware that the defendant is not his biological father.

"Section 3105.13 O.R.C. states:

" 'The granting of a divorce and the dissolution of the marriage shall not affect the legitimacy of children of the parties.'

"In view of the above line of cases, Section 3105.13 of O.R.C. and the *father's* long role as *father* to this child, the Court holds that the defendant is parent to this child within the eyes of the law and is entitled to full consideration under the law as a parent both as to his obligations and responsibilities toward the child and his rights to act as parent and be considered as a custodian for the child." (Emphasis added.)

Defendant's affidavit in support of temporary custody, which shows plaintiff's adultery, raises the issue of paternity. The affidavit, however, was in response to plaintiff's initial allegation that defendant was guilty of adultery, which would have a bearing on the issue of custody. At any rate, the court granted custody of both children to defendant.

Plaintiff has perfected this appeal, including three assignments of error:

"1. The trial court erred in granting temporary custody of the child Scott to defendant and in ordering plaintiff to pay temporary child support for such child.

"2. The trial court erred in granting permanent custody of the child Scott to defendant, in awarding judgment for arrearage in temporary child support for such child, and in ordering plaintiff to pay support for such child.

"3. The trial court erred in dividing property and debts based on the erroneous legal conclusion that it had authority to award custody of both children to defendant."

Plaintiff's assignments of error are interrelated and are considered together. R.C. 3105.21(A) states that:

"Upon satisfactory proof of the causes in the complaint for divorce, annulment, or alimony, the court of common pleas shall make an order for the disposition, care, and maintenance of the children of the marriage, as is in their best interests, and in accordance with section 3109.04 of the Revised Code."

The Supreme Court, in *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228, 234 [59 O.O.2d 264], held that R.C. 3105.21(A) confers jurisdiction to determine only custody of "legitimate" offspring of the marriage.

This court, in *Scarville* v. *Fambro* (Aug. 19, 1980), Franklin App. No. 79AP-845, unreported, at page 5, however, stated that:

"The common law has long presumed

that children born or conceived in wedlock are issue of the marriage and, thus, legitimate. See, generally, Annotation, 128 A.L.R. 713. At one time this presumption was conclusive, but that rule has been discarded in many jurisdictions in favor of one which allows the presumption to be rebutted upon a showing of some degree of proof to the contrary. * * *

"The predominant rule at present is that, in order to rebut the presumption of legitimacy, there must be 'clear and convincing' evidence that the husband is not the father. *State, ex rel. Walker,* v. *Clark* (1944), 144 Ohio St. 305 [29 O.O. 450]. This court has applied the 'clear and convincing rule' on a number of occasions. The test may be satisfied by less strict circumstances than 'impossibility,' as in *Yerian* v. *Brinker* (1941), 35 N.E. 2d 878, 33 Ohio Law Abs. 591. * * *"

The only evidence that the oldest child is illegitimate is the stipulation of the parties and defendant's affidavit. There is no evidence of a birth certificate indicating that any one other than defendant is the father. In this case, a stipulation and affidavit to the contrary are insufficient as a matter of law to overcome the presumption that a child conceived or born during a marriage is legitimate. This is particularly valid in this case concerning the other factors supporting the presumption that defendant is the legal father. For instance, the court's judgment entry included the following:

"The Court further finds that two (2) children were born during the marriage of the parties, namely, Scott and Shawn, and that further, the Plaintiff and Defendant are 'parents' to both children and are entitled to full consideration under the law as parents as to their obligations and responsibilities towards the children and their rights to act as parent and to be considered as custodian for the children."

Further, defendant raised the child from birth. Moreover, by definition, a male parent is a father. The court declared defendant to be a parent. Therefore, the court necessarily found him to be the child's father.

Further, the Supreme Court, in *Hall* v. *Rosen* (1977), 50 Ohio St. 2d 135, 140 [4 O.O.3d 336], wrote the following:

"Rejection of the long-accepted policy proclaimed by *Miller* v. *Anderson* [(1885), 43 Ohio St. 473], *supra,* should be undertaken only with a comprehension of the inherent evils to be aroused by such a course. The possible harm is not merely the illegitimation of a heretofore legitimate child, but the disruption of the normal psychological and sociological relationship between father and child which is nurtured by support and association. The creation of an invitation to bring support actions against alleged biological fathers, perhaps many years after the fact, portends the possibility of 'father-shopping,' *i.e.,* seeking support from the most successful of possible candidates. These actions will not only present the problem of the staleness of the evidence, but also the possibility of disrupting other established families by moral disparagement and suddenly increased financial responsibilities. Invitation of these evils is not a sagacious action."

Due to the length of time that defendant considered the oldest child to be his son and the natural mother's concomitant assent thereto, both parties are effectively estopped from denying parentage by stipulation. Any other result would open the door to, in effect, "shop for a father."

While the trial court erred in accepting the stipulation and affidavit as supporting or proving the child was born out of wedlock, the error was not prejudicial. The child is the defendant's natural child for all purposes and any finding to the contrary is set aside, having been based upon legally insufficient evidence. In effect, this is what the trial court was saying, although having erroneously admitted the stipulation, the court unnecessarily struggled with biological

findings of paternity. However, the court also recognized, as does this court, the injustice of allowing parents to stipulate away paternity in the manner attempted herein.

Hence, the basic rationale of the *in loco parentis* rule set forth in *Miller* v. *Anderson* (1885), 43 Ohio St. 473, was properly applied to this case. Traditionally, however, the presumption is rebuttable as opposed to conclusive. Nevertheless, it is noteworthy that the child has not been declared illegitimate by bastardy proceedings. Thus, defendant is the child's legitimate father. Moreover, since the parties acted and claimed to be the child's parents for twelve years, it is unconscionable for them to enter a stipulation to the contrary.

Plaintiff contends that *Chatman* v. *Chatman* (1977), 54 Ohio App. 2d 6 [8 O.O.3d 24], applies to this case, due to the following quotation at page 7:

"* * * The only situation in Ohio in which there is a presumption of parenthood is where the man marries a woman who is pregnant, knowing she is pregnant by another man, and then, subsequent to the marriage, the child is born during wedlock. (*Burse* v. *Burse* [1976], 48 Ohio App. 2d 244 [2 O.O.3d 197].) * * *"

Nonetheless, when such quotation is placed in its proper context, it becomes plain that *Chatman* is distinguishable from this case. In *Chatman,* there was never a presumption of parenthood at the inception of the case because the parties were married not only after the child was conceived, but also after he was born. Hence, in *Chatman,* the husband attempted to fabricate a presumption to overcome the requirement that, in order to be considered for custody rights, he must adopt the child through statutory adoption procedures.

In this case, the parties were married before the child was even conceived, which is certainly distinguishable from the facts in *Chatman.* Since the defendant was presumed to be the father, there was

never any need to initiate adoption proceedings.

Thus, when read in context, it is plain that the language in *Chatman,* citing *Burse,* which supposedly limits the presumption of paternity to only the situation in which a man marries a woman whom he knows to be pregnant at the time, was intended to refer only to that category of situations in which the child was conceived before marriage. The statement has no application to situations wherein the child was conceived after the termination of, or during, the marriage. This is plain because there exists the presumption that a child conceived during the marriage is legitimate, which is another situation distinct from that set forth in the discussion of *Chatman.*

Moreover, *In re Estate of Gompf* (1964), 175 Ohio St. 400 [25 O.O.2d 388], paragraphs one and two of the syllabus, is also distinguishable. The legal parental relationship, in this case, is already presumed, thereby eliminating the necessity for adoption proceedings; while in *Gompf,* the party was seeking to establish the existence of such relationship without benefit of such presumption.

*In re Connolly* (1974), 43 Ohio App. 2d 38 [72 O.O.2d 194]; *In re Gutman* (1969), 22 Ohio App. 2d 125 [51 O.O.2d 252]; and *In re Gary* (1960), 112 Ohio App. 331 [14 O.O.2d 431], are also inapplicable as they involve bastardy proceedings for children already illegitimate. The child, herein, is presumed to be legitimate and, consequently, these cases do not apply.

Furthermore, *In re Perales* (1977), 52 Ohio St. 2d 89 [6 O.O.3d 293], does not apply since it was a suit between a parent and a non-parent. In this case, the court found both parties to be parents, which is consistent with the presumption in defendant's favor.

In sum, the trial court's judgment entry does not refer to whether the defendant is the child's biological father, but the court found that defendant was a parent to both children. That finding and

the judgment are correct as there was no legally sufficient evidence to make any other finding.

Therefore, plaintiff's assignments of error are not well-taken and are overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCORMAC, J., concurs.

WHITESIDE, P.J., dissents.

WHITESIDE, P.J., dissenting. The majority opinion needlessly bastardizes the child in question by affirming a judgment predicated upon the express factual finding of the trial court that "the older child, although conceived and born during the course of the marriage, is not the biological child of the defendant."

Defendant stipulated he is not the father of this child. If he is not, he should not be awarded custody, and the trial court has no jurisdiction to grant him custody in this proceeding. The defendant is only a stepfather to the child if the trial court be correct. For this reason, all three assignments of error are well-taken.

This does not mean, however, that the child in question need be needlessly bastardized. Rather, there is nothing properly in this record to support a finding that the child was not born of the marriage of the parties. As the majority notes, a child conceived and born during wedlock is strongly presumed to be issue of the marriage. While this presumption is rebuttable, under common law, it could be properly rebutted only by clear and convincing evidence that it is impossible that the mother's husband is also the father of the child, usually requiring clear evidence of non-access. A stipulation by the parties (especially one under such duress as defendant utilized against plaintiff) that the husband is not the father of the child cannot serve as the necessary

clear and convincing evidence. If such a stipulation is to be accepted, it must at the very least be deemed to stipulate impossibility and to rebut the presumption. To this extent, I agree with the majority. However, the trial court not only accepted the stipulation but utilized it as a basis for expressly finding defendant not to be the father and, instead, only that the parties are "parents" and entitled to consideration as parents whatever that may mean.

The only appropriate finding in this case upon the evidence adduced is that defendant is the natural, as well as the presumed, father of the child. I cannot join in the affirmance of a judgment, the effect of which permanently stigmatizes this child as illegitimate and places his legal relationship with defendant under a nebulous cloud while awarding defendant, despite his formal rejection and disacknowledgment of parentage of the child, with custody and rights the same as a parent, rather than only those of a stepparent. Under present law, effective after the trial court's judgment, a procedure is provided in R.C. Chapter 3111 for determining paternity, although defendant would be presumed to be the natural father by R.C. 3111.03(A)(1).

If defendant wishes to prove he is not the father of the child, he should be afforded an opportunity to do so in an appropriate proceedings within the limitations of admissible evidence as to impossibility, not just evidence that someone else could be the father assuming such evidence to exist. Defendant, however, initially raised the issue by affidavit claiming it was impossible for him to be the father of the child. If that be true, he is only a stepfather to the child and has only the rights of a stepfather.

Contrary to the implication in the majority opinion, the trial court expressly found that defendant is not the father of the child. That finding is inconsistent with the other findings since defendant then would be only a stepfather, a type of "parent" but not one whose right to

custody is equal to that of the mother. Under the finding of the trial court, the child would not be issue of defendant and would not be entitled to the legal rights of a child, only that as a former stepchild — a child of a woman to whom defendant was previously married. Awarding defendant custody does not change the legal relationship as found by the trial court. If defendant wishes to challenge paternity, he necessarily gives up the right to consideration for custody.

Accordingly, I would sustain the assignments of error and reverse the judgment insofar as it determines parentage of the child and awards custody to defendant and remand the cause for a new trial upon the issue of parentage and custody of the child.