MILLER

v.

MILLER, Appellant;

State of Ohio, Appellee.

[Cite as *Miller v. Miller* (1991), 73 Ohio App.3d 721.]

Court of Appeals of Ohio,
Jackson County.

No. 658.

Decided July 9, 1991.

*Mark T. Musick,* for appellant.

*Mark Ochsenbein,* Prosecuting Attorney, for appellee.

HARSHA, Judge.

This is an appeal from a judgment entered by the Jackson County Court of Common Pleas ordering that child support arrearage payments received by the Jackson County Child Support Enforcement Agency from Gary Miller, plaintiff, be transmitted to the Clerk of Courts to be credited against the obligation of Jacqueline B. Miller, defendant-appellant, to pay restitution for the crime of theft in office.

Appellant assigns the following error:

"The trial court erred in its order of November 30, 1990, by ordering the appellant's right to receive child support arrearage payment as credited against appellant's obligation to pay restitution by exceeding the statutory authority granted the trial court by the Ohio Revised Code."

Appellant and Gary Miller were married on June 16, 1971, and subsequently had one child, Cindy Lee Miller. After the parties were divorced in 1974, the trial court entered a judgment which granted appellant custody of the parties' child and ordered Gary Miller to pay child support in the amount of $20 per week plus poundage through the Jackson County Bureau of Support. On June 10, 1987, the trial court determined that Gary Miller was in contempt of its prior support order and further determined that he owed child support arrearage in the amount of $4,263.04. The trial court ordered Gary Miller to pay $40 per week plus poundage for the arrearage and $20 per week plus poundage for current child support.

On May 31, 1990, Jackson County Child Support Enforcement Agency ("CSEA") filed an affidavit which stated that the parties' child would become emancipated as of June 25, 1990 and requested an order terminating Gary Miller's obligation to pay current child support. The trial court terminated Gary Miller's current child support obligation and ordered him to pay $20 per week plus poundage upon the child support arrearage through the CSEA.

In 1990, appellant was convicted by the trial court for the crime of theft in office, as proscribed by R.C. 2921.41(A)(2), a felony of the third degree. Upon being sentenced to a prison term, appellant wrote a note to the CSEA,

requesting that her daughter, Cindy Lee Miller, be made the payee on future child support arrearage checks received from the CSEA. On November 30, 1990, the trial court issued an entry, upon its own motion as well as the motion of appellee in appellant's criminal case, ordering:

"1. Payments received from the Obligor upon child support arrearage shall be transmitted to the Clerk of Courts to be credited against the Obligee's obligation to pay restitution to Jackson County Department of Human Services, the victim of the Obligee's crime of theft in office.

"2. Any party may have a hearing upon request to consider these matters further."

Cindy Lee Miller then wrote a letter to the trial court, objecting to its November 30, 1990 order, and claiming that the arrearage checks were necessary to support her. On January 2, 1991, following a review hearing to address the issue of whether the child support arrearage was an asset owned by the emancipated child, the trial court issued an order which, in effect, affirmed its prior order regarding payments for the child support arrearage.

Appellant's sole assignment of error on appeal asserts that the trial court erred in ordering the Jackson County CSEA to transfer child support arrearage payments from Gary Miller to the victim of appellant's theft in office offense, i.e., the Jackson County Department of Human Services, rather than ordering that the arrearage payments be made first to appellant. Appellant's argument relies solely on R.C. 3113.21, which provides in relevant part as follows:

"(K)(1) Except as provided in division (K)(2) of this section, *if child support arrearages are owed by an obligor to the obligee and to the department of human services, any payments received on the arrearages by the child support enforcement agency first shall be paid to the obligee until the arrearages owed to the obligee are paid in full.*" (Emphasis added.)

Accordingly, R.C. 3113.21(K)(1) provides that where arrearages are owed to both the custodial parent and a public agency, the bureau is to pay the arrearage amount first to the obligee until that arrearage is paid in full and then pay toward the agency's arrearage. Baldwin's Ohio Domestic Relations Law (1987) 405, T 39.04. At first glance, the only apparent exception to this order of payment is money collected from income tax intercept. *Id.;* R.C. 3113.21(K)(2).

In the instant case, however, the trial court ordered payment to the Jackson County Department of Human Services in its capacity as victim of appellant's R.C. 2921.41(A)(2) theft in office conviction, rather than to appellant. A court that imposes sentence for a violation of R.C. 2921.41(A)(2) shall require the

public official who is convicted of or pleads guilty to the offense to make restitution for all of the property or the service that is the subject of the offense, in addition to the term of imprisonment and any fine imposed. R.C. 2921.41(C)(2)(a); see, also, *State v. Brooks* (1986), 27 Ohio Misc.2d 23, 27 OBR 209, 500 N.E.2d 412.

Generally, a trial court's order of restitution will not be reversed absent a showing of an abuse of discretion. See, *e.g., State v. Williams* (1986), 34 Ohio App.3d 33, 516 N.E.2d 1270, which involves an R.C. 2929.11(E) restitution order. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1184, citing *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149. In the case at bar, appellant does not challenge the court's authority to order restitution, but rather objects to the manner of payment pursuant to that order. The abuse of discretion standard applies here also. Cf., *e.g., Powers v. Powers* (Apr. 8, 1991), Lawrence App. No. 1944, unreported, 1991 WL 62147.

During the proceedings below, appellant's argument appeared to focus upon the right of the parties' daughter, emancipated prior to the subject order, to receive the child support arrearage payments. Appellant does not raise this issue on appeal, instead relying solely on R.C. 3113.21(K)(1). Accordingly, we do not decide whether we would reach the same result if the parties' child asserted a valid claim to the past-due child support. The Ohio Supreme Court, commenting on claims for past due child support, has said:

" 'Defendant [father] was instrumental in bringing into the world the child for whom the benefit of the support money was intended, and he assumed, in addition to the natural duties of a parent, a statutory duty to support the child until emancipation or majority. The weekly support order merely put a price tag on the statutory duty already existent. The defendant knew of the existence of his obligation of support * * * and the extent of such obligation was fixed by * * * the judgment of divorce. The mere fact that he failed to meet such obligation does not mean that he was excused therefrom; it simply means that someone assumed his duty of support, for, in the absence of evidence to the contrary, the court will presume that the child was clothed, fed and generally accorded the necessities of life, the payment for which the weekly support money was intended.' " *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 37, 15 OBR 134, 136, 472 N.E.2d 328, 330, quoting *Smith v. Smith* (1959), 168 Ohio St. 447, 456–457, 7 O.O.2d 276, 281, 156 N.E.2d 113, 120.

We recognize the duty of support runs from parent to child, and not directly from noncustodial parent to custodial parent. However, when the noncustodi-

al parent fails to make payments as ordered and either the custodial parent or a public agency must assume that additional burden, the parent or agency is entitled to recoup its payments from the obligated parent. In the case at bar, absent evidence to the contrary, it is assumed that appellant provided the parties' child with the requisite support in the absence of timely child support payments from appellee. Therefore, the right to child support arrearage payments was an asset owned by the custodial parent. Accordingly, absent any express statutory provision to the contrary, it was an asset subject to the trial court's restitution order pursuant to R.C. 2921.41(A)(2).

As noted previously, appellant contends that R.C. 3113.21(K)(1) has been violated by the trial court's order. In analyzing R.C. 3113.21(K)(1), we must follow the axiom of statutory construction that the object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the General Assembly. *Ohio State Univ. Hosp. v. Kinkaid* (1990), 48 Ohio St.3d 78, 80, 549 N.E.2d 517, 518. Additionally, it has been noted that:

" '[T]he intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. *The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact.* * * * ' (Emphasis added.) Further, we know that '[i]n matters of construction, it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used. * * * ' " *Id.*, quoting *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus, and *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus.

Undoubtedly, the preeminent purpose of R.C. 3113.21(K)(1) is to reimburse custodial parents for unpaid, overdue child support. The secondary purpose of that section is to reimburse local human services agencies for public assistance provided to unsupported children. However, neither of these purposes is improperly frustrated by an order that requires a criminally convicted custodial parent to apply his or her portion of the arrearage to restitution of the victim where there is no claim to the arrearage by an unemancipated minor child. The noncustodial parent must still pay the arrearage he or she owes to the local human services agency.

Appellant cannot successfully contend that the arrearage would not properly be subject to the restitution order upon being paid to her by the CSEA. It would be incongruous to construe R.C. 3113.21(K)(1) in such a way that a court order requiring the CSEA to transfer the money to the theft victim, *e.g.,*

the Jackson County Department of Human Services, would be illegal whereas a court order requiring appellant to transfer the money to the theft victim *after* receiving the money from the CSEA would comport with the statute. Again, we emphasize that we are not presented herein with a situation where the support payments are intended for a non-emancipated child. R.C. 3113.-21(K)(1) presupposes that the custodial parent is not subject to, for example, a judgment lien on his or her assets for the payment of restitution pursuant to a criminal offense.

Accordingly, and limited to the unique, factual circumstances presented in the instant case, we are not persuaded that the trial court either abused its discretion or acted in violation of R.C. 3113.21(K)(1) in ordering that assets owned by appellant, child support arrearage payments, be paid by the CSEA to the victim of appellant's theft in office offense rather than to appellant. For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE, J., concurs.

GREY, J., dissents.

GREY, Judge, dissenting.

I respectfully dissent. There is a growing tendency to treat child support as a financial asset of the custodial parent and to treat custody like the old common-law usufruct, or perhaps something akin to a power coupled with an interest.

In *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328, and *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, the Supreme Court used a presumption that someone supported the child as a device to compel the father to pay arrearages he had allowed to accumulate. Here a presumption is created to deny the child support. The trial court and this court both presume that appellant made up the missing child support. I would not make that presumption, nor would I presume automatically when child support is not paid that only the custodial parent and not the child suffers.

Thus, I dissent.