In re Estate of ANTKOWIAK.

JANOWIECKI, Appellant,

v.

LUCAS COUNTY CHILD SUPPORT ENFORCEMENT AGENCY et al., Appellees.

[Cite as *In re Estate of Antkowiak* (1994), 95 Ohio App.3d 546.]

Court of Appeals of Ohio,
Lucas County.

No. L–93–270.

Decided June 24, 1994.

---

6. See, *e.g.*, R.C. 5501.31, 5501.32, 5511.01, and 5521.01.

*Connie Zemmelmen,* for appellant.

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, and *Michael P. Mikkonen,* Assistant Prosecuting Attorney, for appellee Lucas County Child Support Enforcement Agency.

*Gary O. Sommer,* for appellee Michael Antkowiak.

SHERCK, Judge.

Appellant, Christian A. Janowiecki, files this appeal from an order of the Lucas County Court of Common Pleas, Probate Division, granting summary judgment to appellees, Lucas County Child Support Enforcement Agency ("LCCSEA") and Michael Antkowiak. Appellant, the adult son of decedent Jeanette Antkowiak, brought a declaratory judgment action seeking to have child support arrearages, accumulated during his minority, declared his separate property rather than part of the decedent's estate. The court denied summary judgment to the adult child and decided that the arrearage was a chose in action includable in the decedent's estate. Because we conclude that the right to collect arrearages in this matter belongs to the adult child, we reverse the trial court's decision.

Allan J. Janowiecki married Jeanette Antkowiak, f.k.a. Janowiecki, on October 6, 1972. During the course of the marriage, Jeanette gave birth to appellant, Christian A. Janowiecki. When the marriage ended in divorce in 1976, Jeanette received custody of appellant; the court ordered Allan Janowiecki to pay $25 per week child support. Jeanette later married appellee, Michael Antkowiak.

Allan Janowiecki did not make regular child support payments. By the time appellant approached the age of majority, support arrearages owed by Allan Janowiecki totaled several thousand dollars. At the same time, however, efforts by LCCSEA[1] to collect Allan Janowiecki's support arrearages became more successful. By the fall of 1990, the agency established wage withholding through Allan Janowiecki's employer and received a steady stream of money, which LCCSEA applied to both current support and arrearages.

On November 6, 1990, Jeanette Antkowiak died testate, bequeathing her entire estate to appellee, Michael Antkowiak. On June 9, 1991, appellant became emancipated. In the intervening time, LCCSEA continued to collect current support and arrearages from Allan Janowiecki. LCCSEA holds these funds, along with arrearage amounts collected after appellant's emancipation, in escrow pending the final determination of this matter.

In October 1992, appellant filed a complaint for a declaratory judgment, naming LCCSEA as a defendant. Appellant sought a declaration that the funds held by LCCSEA were his separate property and not a part of his mother's estate. Appellee, Michael Antkowiak, sought, and was granted, leave to intervene. Appellee Antkowiak asserted that the LCCSEA funds were a part of the estate. Both parties moved for summary judgment.

---

1. LCCSEA, as custodian of the funds in dispute, is a nominal appellee in this matter.

The trial court declined to rule on the disposition of the funds collected prior to appellant's emancipation. The court said that the disposition of these funds was within the jurisdiction of the domestic relations division. The rest of the funds, however, the trial court declared were properly includable as assets of the decedent's estate. Accordingly, the trial court granted appellee's motion for summary judgment and denied appellant's. From this order, appellant appeals, setting forth the following single assignment of error:

"The trial court erred in granting appellee's motion for summary judgment and denying appellant's motion for summary judgment, thereby declaring the child support arrears to be an asset of decedent's estate."

Appellant's assignment essentially contests the validity of the summary judgment.

The rules governing summary judgment pursuant to Civ.R. 56 are well established. Three factors must be demonstrated:

" * * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. See, also, *Johnson v. New London* (1988), 36 Ohio St.3d 60, 61, 521 N.E.2d 793, 794–795.

■ In this matter, there exists no genuine issue of material fact. The case requires us to determine who, as a matter of law, is entitled to the arrearages: the estate of the deceased custodial parent or the adult child. This appears to be a case of first impression.

Appellee's argument, which was adopted by the trial court, is straightforward. Parents have a legal duty to support their minor children. When a marriage ends in a divorce or dissolution, one of the parents may be allocated the primary parental rights and responsibilities for the care of the child of that marriage. See R.C. 3109.04. This person is denominated the "residential parent," "the residential parent and legal custodian," or simply the "custodial parent." R.C. 3109.04(K)(2).

Generally, the noncustodial parent is ordered to pay periodic amounts in order to discharge his or her support obligation. R.C. 3109.05; 3113.215. In current language, this makes the noncustodial parent the "obligor" and the custodial parent the "obligee." It is presumed that when the obligor fails to make his support payments as ordered, the obligee or some public agency must assume that additional burden. *Miller v. Miller* (1991), 73 Ohio App.3d 721, 724–725, 598

N.E.2d 167, 169–170, citing *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328, and *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113. When this happens, the party who assumed that burden is entitled to recoup that payment from the obligated party. *Id.* Therefore, according to appellee, the right to collect arrearage payments is an asset belonging to the custodial parent and should be included in the parent's estate upon death.[2]

Appellant basically agrees with appellee's premises, but focuses on the nature and purpose of child support to reach a different conclusion. At common law, and by statute, both parents of a child have a duty of support. *Haskins v. Bronzetti* (1992), 64 Ohio St.3d 202, 203, 594 N.E.2d 582, 583–584; *In re Dissolution of Marriage of Lazor* (1991), 59 Ohio St.3d 201, 202, 572 N.E.2d 66, 68–69. When the parents and the child live together, it is presumed that the father and the mother share equally the burden of a child's support. *Id.,* 59 Ohio St.3d at 203, 572 N.E.2d at 69. Each parent's duty of support to the child continues, however, even though the marriage may be ended by divorce or dissolution. To properly allocate these duties between custodial and noncustodial parents, the court enters a support order. *Id.* The child is the beneficiary of this order. *Peters v. Kozina* (Dec. 18, 1981), Ottawa App. No. OT–81–7, unreported, 1981 WL 5869. The goal of the allocation is to establish a "monetary amount necessary for the support of the child in a standard of living commensurate with the * * * standard of living [the child] would have enjoyed had the marriage continued." *Birath v. Birath* (1988), 53 Ohio App.3d 31, 37, 558 N.E.2d 63, 69–70; see, also, R.C. 3109.05.

According to appellant, while it may be valid to presume that the custodial parent steps in to provide necessities for the child when a support obligor defaults, it is specious to assume that the custodial parent has the capacity to fully satisfy the deficiency to the extent that the child enjoys the standard of living he or she would have had if the marriage had not ended. It is the child, then, who has suffered by the obligor's failure to pay. Therefore, appellant argues, it is then the child to whom arrearages collected after his emancipation are owed, not his mother's estate.

As indicated in our introduction, this case presents a novel question. We have failed to find authority directly on point either within or without Ohio. The trial court, in reaching its decision, principally relied upon *Miller v. Miller, supra,*

---

2. Appellee also argues at length that there is a distinction between a common support order and an order which arises out of a separation agreement which was incorporated into a decree. This distinction purportedly favors appellee's position. We do not reach this argument, as there is no evidence in the record that the original support order here was the result of a separation agreement.

which, in turn relied on the reasoning set forth in *Connin v. Bailey, supra.* The Fourth District Court of Appeals in *Miller,* while recognizing that the duty of support runs from parent to child, rather than from noncustodial parent to custodial parent, nonetheless held that when an obligor fails to make ordered payments it must be presumed that the custodial parent or some public agency assumed the additional burden. That, the court concluded, made the right to collect arrearages an asset of the custodial parent.

Appellant properly distinguishes *Miller.* That case involved a dispute between the custodial mother of an adult child and a county department of human services over the right to credit arrearages to an unrelated claim that the department had against the mother. The adult child was not a party to the proceedings. In noting this, the court of appeals specifically declined to hold that the same result would have occurred had the adult child presented a valid claim. *Id.,* 73 Ohio App.3d at 724, 598 N.E.2d at 169–170. Similarly, appellant notes that *Connin,* from which the *Miller* court derived the presumption that a custodial parent assumed a defaulting obligor's duty of support, has as its sole issue the question of whether laches acts to bar collection of arrearages. Therefore, the discussion of such a presumption is merely dicta. We should also note that the *Connin* presumption encompasses only necessities.

In other jurisdictions and other applications, decisions are similarly unclear. Indiana courts have held that a subsequent husband of a deceased custodial parent had standing to bring an action for support arrearages on behalf of the custodial parent's estate without proving the custodial parent's expenditures on the child's behalf. *Lizak v. Schultz* (Ind.1986), 496 N.E.2d 40, 41–42; *Lizak v. Schultz* (Ind.App.1985), 480 N.E.2d 962, 964. It should be noted, however, that the case involved a noncustodial father who sought to avoid paying arrearages and an executor who had adopted the children in question. As in *Miller,* the children had no competing claim.

Analogous to the issue of whether support arrearages are an asset of the custodial parent's estate is the question of whether such arrearages should be included as part of the custodial parent's bankruptcy estate. Here too, there is a split of authority. Relying on various state laws, some bankruptcy courts have held that child support arrearages are a property interest that belongs to the child and that the custodial parent merely has a right to enforce the child's interest. *In re Welch* (Bkr.Kan.1983), 31 B.R. 537, 539; *Zimmerman v. Starnes* (D.C.Colo.1984), 35 B.R. 1018; *In re Gardner* (D.C.Ore.1965), 243 F.Supp. 258, affirmed *sub nom. Boston v. Gardner* (C.A.9, 1966), 365 F.2d 242.

As appellee correctly points out, however, Ohio bankruptcy courts have refused to follow this holding when applying Ohio law. *In re Harris* (1981), S.D.Ohio Bkr. No. 2–80–0761, unreported; *In re Walker* (1984), S.D.Ohio Bkr. No. 2–80–

03195, unreported; *In re Jefferson* (1989), S.D.Ohio Bkr. No. 2–88–06171, unreported. The rationale for Ohio's position is found in *Harris* at 3. There, the bankruptcy court stated that, although there was no "Ohio case law or statute which states that a custodial parent owns the right to obtain a judgment for child support arrearages," nonetheless, the custodial parent under Ohio procedural law may obtain a judgment on arrearages and execute on that judgment. Since such is a "private civil action which may be pursued personally" by the obligee who need not account for the use of the money so obtained, as would a fiduciary, then such right is a chose in action belonging to the obligee/custodial parent and is to be included in the bankruptcy estate.

In the present case, we note that the trial court voiced concern in denominating the role of an obligee as a fiduciary for the child. The trial court feared that so classifying the obligee might impose a duty to account for the use of funds earmarked for the beneficiary. Such an obligation could lead to instances wherein an obligor might call on an obligee to account for monies received or might withhold support until a child reached majority when he or she could then make a personal claim for the arrearages. While such concerns may be valid, we believe that such dangers are not of sufficient magnitude to vest a property right where one otherwise might not be found.

■ The purpose of child support is to maintain the child as nearly as possible at the standard of living which the child would have enjoyed had not the child's parents separated. *Birath v. Birath, supra.* The statutory scheme enacted to reach this goal contains certain explicit and implicit assumptions. It is first presumed that the custodial parent will contribute that measure of nurture and financial support that such parent would have provided had the family remained intact. R.C. 3113.215(C). The noncustodial parent's financial support obligation is that amount established by a domestic relations order in conformity with R.C. 3113.215.

When a child support obligor pays the decreed amount, it is forwarded to the obligee. It is presumed that the custodial parent/obligee will use these funds, along with his or her own assets for the benefit of the child. The custodial parent's role in this instance is that of the child's natural guardian. *Haskins v. Bronzetti, supra,* 64 Ohio St.3d at 205, 594 N.E.2d at 585. As such, the custodial parent is legally responsible for the care and support of the child. *In re Connolly* (1974), 43 Ohio App.2d 38, 39, 72 O.O.2d 194, 194–195, 332 N.E.2d 376, 377–378.

During the child's minority, it is the custodial parent who is given child support for the benefit of the child. Even after a child reaches majority, the right of a former custodial parent to collect support arrearages is superior to all others' because there is a rebuttable presumption that the monies sought were those

advanced by the custodial parent for the benefit of the child.[3] *Miller v. Miller, supra,* 73 Ohio App.3d at 725, 598 N.E.2d at 170; *Smith v. Smith, supra,* 168 Ohio St. at 457, 7 O.O.2d at 281–282, 156 N.E.2d at 120–121. It is this presumption that led the *Miller* court to declare that a support arrearage was an asset of the custodial parent.

The underlying policy purposes advanced by the presumption must be examined to determine whether its application in the present context is appropriate. "Presumptions must be based on some necessity. Courts will not go into the domain of presumptions where direct proof can be obtained." *Avyers v. Woodard* (1957), 166 Ohio St. 138, 144, 1 O.O.2d 377, 380, 140 N.E.2d 401, 406. In each of the cases we have herein cited, the presumption at issue arose when one obligated to support a child sought to avoid that obligation. In each of these cases, but for the presumption, a custodial parent may have been called upon to present an accounting of sums expended for the benefit of the child—even years after the fact. Such a demand would be untenable for most parents.

Application of the presumption allocates the burden of production to the obligor who must come forward with competent, credible evidence to show that a custodial parent/obligee did not provide a child-beneficiary with necessities when he or she could have. If the obligor can succeed at this task, the burden then shifts to the obligee to refute such evidence. The issue then becomes a question of fact. See *id.,* 166 Ohio St. at 144–145, 1 O.O.2d at 380–381, 140 N.E.2d at 405–406; Evid.R. 301, 1980 Staff Notes. As a practical matter, this all but forecloses an obligor's attack of an obligee's financial stewardship of a minor when raised to avoid paying arrearages.

The policy purposes served by the presumption weigh differently in the present context. Upon the death of a custodial parent, the question is not whether a support obligation should be avoided, but whether the child-beneficiary has been provided all that is due. As with the proposition that a living custodial parent's claims for arrearages are founded in the parent's advancement of funds, proof that a child has been denied the standard of living to which he or she was entitled is impractical, if not impossible. Even so, it takes no advanced application of economics to conclude that, in all but the most affluent families, a custodial parent does not have the financial capacity to fully compensate for the absence of child support payments. Applying the common-law criteria for presumptions to these facts, see *Avyers v. Woodard, supra,* we conclude that such criteria militate in favor of creating a corollary presumption. Therefore, we hold that the

---

**3.** It should be noted that there is a statutory priority imposed when a department of human services has acted to fill the support void, where the noncustodial parent has failed to meet his support obligation. See R.C. 3113.21(K)(1) and (2).

existence of a child support arrearage upon the beneficiary's emancipation and the death of a custodial parent establishes a *prima facie* case that the emancipated child has been denied the standard of living to which he or she was entitled. When the statutory beneficiary of child support is found to have been so denied the benefits of a child support award, he or she has a superior claim to the arrearages.

██ It should be noted that our holding creating this corollary presumption applies only in those cases where the custodial parent has died and only when there is an emancipated beneficiary. A custodial parent who during his or her lifetime wishes to claim arrearages may do so by having the arrearages reduced to judgment. Such judgment would then become part of a deceased custodial parent's estate. Absent such a judgment, however, the right to collect support arrearages passes directly to the emancipated beneficiary upon the death of the custodial parent.

Applying these presumptions appropriately serves to shield a living custodial parent from frivolous challenges of support obligors, yet avoids the incongruous result of favoring a stranger or a deceased parent's creditor over the person to whom the benefit of the support was intended to accrue. This result is consistent with purposes articulated in R.C. Chapter 3113 and is in conformity with the policy articulated by the common law. See *Peters v. Kozina, supra.*

Accordingly, appellant's assignment is well taken and he is entitled to a declaration that the accumulated support arrearages held by LCCSEA pass to him outside his late mother's estate.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Probate Division, is reversed. Court costs are assessed to appellee.

*Judgment reversed.*

ABOOD, P.J., concurs.

GLASSER, J., dissents.

GLASSER, Judge, dissenting.

I dissent from the finding that an emancipated child has the right to recover child support arrearages collected by the child support agency after the death of the custodial parent and that such funds are not assets of the deceased parent's estate, thereby reversing the judgment of the trial court.

The trial court relied on the *Miller* decision, where the custodial mother of an adult child had a restitution obligation in a criminal case. That court ordered child support arrearage funds collected by the Jackson County Child Support

Enforcement Agency to be applied to the restitution obligation of the convicted custodial parent. The majority, noting that the adult child was not a party, states that the Jackson County Court of Appeals specifically declined to hold that the same result would have occurred if the adult child presented a valid claim. There is nothing in that decision to support that suggestion. As a matter of fact, the custodial mother in *Miller* wrote to the agency from prison to request that her daughter be made the payee on future child support arrearage checks from the agency. The Fourth District Court of Appeals specifically noted:

"Cindy Lee Miller then wrote a letter to the trial court, objecting to its November 30, 1990 order, and claiming that the arrearage checks were necessary to support her. On January 2, 1991, following a review hearing to address the issue of whether the child support arrearage was an asset owned by the emancipated child, the trial court issued an order which, in effect, affirmed its prior order regarding payments for the child support arrearage." *Id.*, 73 Ohio App.3d at 723, 598 N.E.2d at 168.

After considering this issue, that court then proceeded to apply these funds to the restitution obligation of the custodial parent, which arose from the criminal violation of theft in office. It appears that the *Miller* decision fully supports the trial court's result in the present case. That decision as well as many others cited by the majority does not imply or suggest that an emancipated child could maintain an action for collected child support arrearages whether the custodial parent was living or deceased.

The dissenting opinion in *Miller* acknowledges that in *Connin v. Bailey, supra,* and *Smith v. Smith, supra,* the Ohio Supreme Court utilized a presumption that the custodial parent "made up the missing child support." 73 Ohio App.3d at 726, 598 N.E.2d at 171. The death of the custodial parent does not change the enunciated existing presumption of the Ohio Supreme Court and the resulting status of the parties. Here, the trial court's concern for creating a duty for the custodial parent to account for the use of funds earmarked for the child is valid. The trial court's decision does not open the door to injustice, but rather discourages litigation in an area that is clearly not desirable and may adversely affect family relationships. I would, therefore, affirm the trial court in this matter.