The STATE ex rel. DONOVAN et al., Appellees,

v.

ZAJAC, Appellant.

[Cite as *State ex rel. Donovan v. Zajac* (1998), 125 Ohio App.3d 245.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 96–G–2006.

Decided Jan. 2, 1998.

246

*Robert R. Wantz,* for appellee, Carolyn Donovan.

*Harmony Donovan, pro se.*

*Charles F. Cichocki,* for appellant, Stanley Zajac.

*David P. Joyce*, Geauga County Prosecuting Attorney, *Michael P. Quinlan*, Assistant Prosecuting Attorney, for appellee, Geauga County Child Support.

———————

Ford, Presiding Judge.

This is an accelerated appeal from the Geauga County Court of Common Pleas, Juvenile Division. Appellant, Stanley Zajac, appeals a judgment awarding back child support in the amount of $37,762.03 to both Carolyn Donovan ("Carolyn") and Harmony Donovan ("Harmony"), appellees.

In early 1977 appellant and Carolyn engaged in a sexual relationship that lasted one night. As a result of this encounter, Carolyn became pregnant and, according to Carolyn, she informed appellant that she "was expecting." Carolyn gave birth to Harmony on October 25, 1977. Appellant took no action to support Harmony or to pay for childbirth expenses.

At some point in late 1977, or early 1978, Carolyn filed a bastardy complaint alleging that appellant was the father of Harmony.[1] In 1978, the bastardy complaint was dismissed for failure to prosecute; thus, appellant was not adjudged to be Harmony's father at that time. From 1978 to 1992, Carolyn made little, if any, attempt to find appellant, although appellant lived at the same address from 1977 to 1989 and has worked for the same employer since 1973. Further, appellant has lived at only two addresses since 1989.

In 1992, Carolyn applied to the Cuyahoga County Child Support Enforcement Agency for assistance in establishing a child support order. No support order resulted from this effort. In 1995, Carolyn, with the assistance of a private investigator, located appellant in Seven Hills, Ohio. Since Carolyn and Harmony then resided in Geauga County, the matter became the responsibility of the Geauga County Child Support Enforcement Agency.

On September 25, 1995, appellees filed a complaint requesting that the court enter a judgment establishing a parent-child relationship between appellant and Harmony, ordering appellant to pay Carolyn's costs of childbirth, and ordering appellant to pay support from the date of Harmony's birth.[2] Harmony reached

———————

1. The evidence in the record concerning the bastardy complaint is minimal. The trial court's judgment entry at issue in the present appeal indicates that the bastardy complaint was filed in January 1977, but this date may be somewhat suspect, since it is uncontroverted in the record that Harmony's date of birth is October 25, 1977.

2. In the complaint, Harmony, then a minor, was properly named a plaintiff "by and through her mother and next friend, Carolyn Donovan[.]" Harmony reached the age of majority just one month after the complaint was filed. She received notice that her rights may have been affected by those proceedings and that she had a right to appear personally at all future

the age of majority on October 25, 1995, and at some point after the filing of the complaint, was emancipated. Appellant filed an answer to the complaint on October 13, 1995, denying the allegations of the complaint. In the answer, appellant further asserted that the complaint failed to state a cause of action against appellant and that the complaint failed to join an indispensable party to the litigation.

Appellant moved for leave to file an amended answer, which motion was subsequently granted. In his amended answer, appellant asserted the defense of laches. On December 5, 1995, the trial court ordered that appellant and Carolyn submit to HLA[3] blood group testing pursuant to R.C. 3111.09. In a judgment entry filed on June 10, 1996, the trial court found that the parties had stipulated that appellant was the father of Harmony.

Also, on June 10, 1996, an evidentiary hearing was held to determine appellant's child support obligation. In a judgment entry dated August 7, 1996, the court held that Carolyn's claim was not barred by the doctrine of laches and that appellant owed a duty to support Harmony from the date of her birth. Therefore, the court found that appellant's total support obligation was $75,524.06, and ordered that half of that amount, $37,762.03, be paid to both Carolyn and Harmony.

From this judgment, appellant now asserts the following as error:

"[1.] The trial court erred to the prejudice of the appellant by failing to apply the doctrine of laches to appellee's second paternity action since appellant was materially prejudiced by the lapse of eighteen years between the two actions.

"[2.] The trial court erred to the prejudice of the appellant by ordering him to pay past support to Carolyn Donovan and Harmony Donovan during time periods [in] which they were recipients of ADC.

"[3.] The trial court erred by awarding a judgment in favor of a party not before the court who failed to appear or prosecute a claim.

"[4.] The trial court erred by permitting the state to participate in the trial since paternity had been admitted and no evidence of past support due any public agency was to be offered."

In the first assignment, appellant asserts that Carolyn's claim for child support should be barred by the doctrine of laches. The Supreme Court of Ohio has held:

---

proceedings related to the complaint. However, Harmony has never appeared at any proceeding related to this matter.

**3.** Human Leukocyte Antigen.

"In 19 American Jurisprudence, 343, Section 498, it is said that the elements of laches are '(1) conduct on the part of the defendant * * * giving rise to the situation of which complaint is made and for which the complainant seeks 'a remedy * * *; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant.'" *Smith v. Smith* (1959), 168 Ohio St. 447, 455, 7 O.O.2d 276, 280, 156 N.E.2d 113, 119.

The court further held:

"Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been *materially prejudiced* by the delay of the person asserting his claim." (Emphasis added.) *Id.* at paragraph three of the syllabus.

The doctrine of laches is applicable to a parentage action. *Wright v. Oliver* (1988), 35 Ohio St.3d 10, 517 N.E.2d 883, syllabus. The decision of a trial court concerning the application of the doctrine of laches will not be reversed on appeal in the absence of an abuse of discretion. *Payne v. Cartee* (1996), 111 Ohio App.3d 580, 590, 676 N.E.2d 946, 952–953. An abuse of discretion is more than just an error in judgment, but rather implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031. Therefore, the issue in appellant's first assignment of error is whether the trial court abused its discretion in concluding that Carolyn's claim for child support was not barred by the doctrine of laches.

In the case at bar, the trial court determined that although Carolyn had waited an unreasonable period of time to assert her claim for child support, appellant was not materially prejudiced by the delay. We agree. This court has recognized that there are two types of material prejudice, either of which necessitate the application of laches: (1) the loss of evidence helpful to the defendant's case, and (2) a change in the defendant's position that would not have occurred had the plaintiff not delayed in asserting her rights. *Huntington Natl. Bank v. Battaglia* (Mar. 25, 1994), Portage App. Nos. 92–P–0100 and 92–P–0101, unreported, at 7, 1994 WL 102382.

Here, appellant does not argue, and the record does not indicate, that he has suffered either of the foregoing types of prejudice. Rather, he merely asserts that he was materially prejudiced by Carolyn's delay because he was deprived of the opportunity to develop a relationship with his daughter for eighteen years.

This court has previously rejected this argument and held that a parent cannot "claim that he was prejudiced by not having a relationship with his child when at all times he had an available remedy through the courts to enforce his visitation rights." *Brooks v. Brooks* (Sept. 11, 1992), Portage App. No. 91–P–2320, unreported, at 8, 1992 WL 188344. Thus, we are not persuaded by this assertion, since appellant had knowledge of the possibility that he was Harmony's father in either 1977 or 1978. If he felt that he was being deprived of a meaningful relationship with his daughter, he could have taken the appropriate legal steps to become involved in Harmony's life at that point, or any time thereafter, but he failed to do so.

Additionally, appellant's reliance upon *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 619 N.E.2d 469, to show that he has suffered material prejudice is misplaced, because in that case, the defendant had absolutely no notice of the possibility that he was the child's father until the mother brought the paternity action twenty years after the child's birth. In the case *sub judice*, appellant was notified on two separate occasions of the possibility of his paternity. First, appellee informed him, while she was still pregnant with Harmony, that she was "expecting." Second, appellant was the named defendant in the prior bastardy action concerning Harmony. Therefore, since appellant has not demonstrated that he suffered material prejudice with respect to his right of parenting as a result of the delay in filing the instant action, we cannot conclude that the trial court abused its discretion in finding that Carolyn's claim for child support was not barred by laches. Accordingly, appellant's first assignment of error is without merit.

In the second assignment of error, appellant argues that the trial court erred in ordering him to pay child support to appellees Carolyn and Harmony during those periods of time in which they received public assistance. R.C. 3111.07 provides that when the obligee parent has received public assistance, the child support enforcement agency of the county in which the child resides must be made a party to the action. Furthermore, R.C. 3111.15(A) provides that after a man is determined to be the father of a child, the father's child support obligation may be enforced in the same, or another, proceeding, by the mother, the child, or the public authority that had furnished support for the child. However, R.C. 5107.07(A) further states that when a parent accepts public assistance under Chapter 5107 of the Revised Code, he or she assigns to the Department of Human Services ("DHS") any right to receive aid he or she had to support from any other person. R.C. 5107.04(C) provides, in part, that the county DHS may recover such aid from the father in a civil action. In such a proceeding, "the client of the prosecutor is the state or agency, department, or political subdivision of the state which has provided the assistance." 1987 Ohio Atty.Gen.Ops. No. 87–

033, paragraph one of the syllabus. Although taken from an advisory opinion of the Attorney General, this proposition has been cited as a correct statement of law. *Crittendon v. Crittendon* (1992), 82 Ohio App.3d 484, 488, 612 N.E.2d 759, 762.

In the present case, it is uncontroverted that Carolyn received public assistance for approximately eight years during Harmony's childhood. However, the questions of which public agency provided the support and the amount of support that was assigned to the state were never explored in the trial court proceedings. At the hearing, the court noted that the assistant prosecutor was in attendance in behalf of the Geauga County Child Support Enforcement Agency, not the DHS. Additionally, the DHS was never a party to the proceedings.

As stated above, the DHS, pursuant to R.C. 5107.04(C), may file a separate civil action for reimbursement of aid from appellant.[4] However, we agree with the Ninth District Court of Appeals in the following conclusion:

"* * * A father's liability to reimburse the state for aid given to his child is mandatory under R.C. 5107.04. * * * It would be a waste of judicial resources to require two actions, one to determine paternity, the other to enter a judgment for aid furnished, when both actions can and should be brought in the same civil suit." *Brightwell,* 93 Ohio App.3d at 429, 638 N.E.2d at 1070.

Thus, we acknowledge that the more efficient approach would be for the DHS to intervene in a parentage action pursuant to R.C. 3111.07(B) rather than bringing a separate action. However, since the DHS was not a party to the action in the trial court and its interests were not represented in that proceeding, the court did not err in failing to enter judgment in favor of the state. Therefore, appellant's second assignment of error is without merit.

In the third assignment, appellant contends that the trial court erred in awarding judgment in favor of Harmony because she failed to actively prosecute her claim at the trial court. As noted above, R.C. 3111.07(A) provides that the child shall be joined as a necessary party to a parentage action absent a showing that there is good cause for not doing so. A child's claim in a parentage action is separate and distinct from that of the mother. *Rees v. Heimberger* (1989), 60 Ohio App.3d 45, 46, 573 N.E.2d 189, 191–192; *Park,* 85 Ohio App.3d at 185, 619 N.E.2d at 473–474. Furthermore, it is well accepted that money sought for back child support was advanced by the custodial parent for the benefit of the child. *Smith,* 168 Ohio St. at 457, 7 O.O.2d at 281–282, 156 N.E.2d at 120–121; *In*

---

4. We note, however, that the DHS may intervene in a paternity action to recover for support furnished to a child pursuant to R.C. 3111.07(B). See *Brightwell v. Easter* (1994), 93 Ohio App.3d 425, 429, 638 N.E.2d 1067, 1070 (Baird, J., concurring).

*re Estate of Antkowiak* (1994), 95 Ohio App.3d 546, 552–553, 642 N.E.2d 1154, 1157–1158; *Miller v. Miller* (1991), 73 Ohio App.3d 721, 725, 598 N.E.2d 167, 170.

■ In the present case, Harmony was a named plaintiff in the original parentage complaint and remained a party throughout the litigation, although she never actively participated in the proceedings. The trial court awarded Harmony half of the back child support owed by appellant. We conclude that the court erred in so finding because we subscribe to the presumption pronounced in *Smith* that the mother presumptively spent the funds sought as back child support on necessities for raising the child. No evidence in the record reveals that Carolyn did not spend those funds in that manner.

Furthermore, we are not persuaded by the appellee's reliance upon *Rees* and *Park* for the proposition that an adult child has a separate and distinct cause of action for retroactive child support from that of the parent. *Rees* involved a parent and her child bringing an action for retroactive child support when the mother's claim was barred by *res judicata.* Under those circumstances, the court held that the child had a separate and distinct cause of action from that of the mother and, therefore, his cause of action was not barred by *res judicata. Id.,* 60 Ohio App.3d at 46, 573 N.E.2d at 191–192. Similarly, in *Park,* the court held that when the mother's cause of action for retroactive child support was barred by laches, the child's cause of action was not so barred, since his claim was separate and distinct from that of his mother. *Id.,* 85 Ohio App.3d at 185, 619 N.E.2d at 473–474. Thus, in both *Rees* and *Park,* the primary rationale for declaring that the child's claim was separate and distinct was that to hold otherwise would have barred any recovery for back child support on behalf of the child.

In the case at bar, we conclude that the mother's cause of action for retroactive child support was not barred by laches; therefore, no compelling reasons exist that necessitate the award of back child support to Harmony. Furthermore, we presume that Carolyn, Harmony's mother, spent the funds now sought as back child support for Harmony's support during her childhood. Consequently, we conclude that the trial court erred in awarding one-half of the child support award to Harmony, and the entire sum shall be awarded to Carolyn.[5] Accordingly, appellant's third assignment is well taken.

■ In the fourth assignment, appellant asserts that the court below erred by allowing the state to participate in the proceedings in the trial court after paternity had been admitted and no evidence of past child support had been

---

5. We acknowledge that our position is contrary to that of the court in *Davis v. Joyner* (Apr. 3, 1996), Hamilton App. No. C–950650, unreported, at 2, 1996 WL 149076, where the court held that the allocation of a child support arrearage is a matter for the trial court to determine.

offered. This argument is without merit, since R.C. 3111.07(A) expressly provides that the child support enforcement agency of the county in which the child resides is a necessary party to the action. Pursuant to R.C. 3111.15(A), the obligation of the father may be enforced in the same parentage proceeding. Although the prosecutor, representing the Geauga County Child Support Enforcement Agency, had no right to any judgment in the action, it was a party to the same proceeding. Further, appellant suffered no prejudice resulting from the prosecution's presence in the proceedings. Therefore, appellant's fourth assignment of error is without merit.

In the interest of justice, we will address the issue of the calculation of appellant's child support obligation for the period of the child's minority, from October 25, 1977 to October 25, 1995. An appellate court may rule upon errors neither assigned or briefed. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 203, 24 OBR 426, 430, 494 N.E.2d 1101, 1105.

In the present case, appellant's child support obligation was miscalculated in two ways. First, Harmony was born on October 25, 1977, but the child support calculation for that year includes child support for the entire year, including those months before Harmony was born. Such a calculation was erroneous, because there was no duty to support Harmony before her birth. Second, the calculations for 1977 through 1986 use the Child Support Guidelines promulgated by the Supreme Court of Ohio in 1987. Those guidelines were not applicable from 1977 to 1986. Therefore, the use of those guidelines was error. We, therefore, remand this matter to to the trial court for proper calculation of appellant's child support obligation from 1977 to 1986 pursuant to the commonly accepted techniques used in Geauga County during each of those years.

Furthermore, we conclude that the trial court abused its discretion by ordering appellant to pay his total support obligation in a lump sum payment. Had appellant's paternity been determined previously, his payments would have been made monthly. Therefore, he should be given a payment schedule over a reasonable period of time, not less than three years, to pay the judgment in this matter.

For the foregoing reasons, appellant's first, second, and fourth assignments are without merit, and appellant's third assignment of error is well taken. Therefore, it is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and remanded. Upon remand, the trial court shall first remove from the calculation of appellant's child support obligation those months in 1977 prior to Harmony's birth, as well as those months in 1995 after Harmony reached the age

of majority. Second, the trial court is directed to recalculate appellant's support obligation for the years 1977 through 1986 using the criteria used in Geauga County at that time. Third, the trial court shall order appellant to satisfy the judgment by making monthly payments over a reasonable period of time, not less than three years.

*Judgment accordingly.*

NADER, J., concurs.

WILLIAM M. O'NEILL, J., dissents.

WILLIAM M. O'NEILL, Judge, dissenting.

It appears to me that both the trial court and the majority in this matter have failed to address the crucial underlying issue raised in this lawsuit. There were clearly two victims in this matter, and they continue to be the defendant and his daughter. They were both victimized by the actions of the mother, and implicitly, the state of Ohio. It is undisputed that an evening of casual sex resulted in the birth of a child. Since the child has now grown to adulthood, the prejudice to the father is complete and irreversible. He will never know the joy of this child falling asleep in his arms; he will not be present at her first basketball game; and he will not be a part of building and reinforcing her moral value system which she will carry for the rest of her life. In short, because of a decision made by the mother, with the unequivocal approval of the state of Ohio, he will remain forevermore a stranger in this child's life. There is no room for disagreement on the issue of loss to the father and child.

The situation this court is faced with is analogous to a mother and child dining in a fine restaurant and enjoying a sumptuous meal. At the end of the evening, when the bill is presented, the restaurant is told, "Oh, send this charge to my acquaintance, he will surely pay."

The trial court made a factual finding that when the mother waited until her child had reached adulthood before bringing this action for child support, she had in fact waited an "unreasonable" amount of time. This is true.

The Supreme Court of Ohio, in *Wright v. Oliver* (1988), 35 Ohio St.3d 10, 12, 517 N.E.2d 883, 886, held that the doctrine of laches "may be applicable in parentage actions filed prior to the expiration of the statute of limitations, but only if the defendant can show material prejudice." This court has applied the doctrine of laches in back child support actions uniformly, particularly when it is apparent that the noncustodial parent would be prejudiced by a claim for support after the fact. See *Nelson v. Nelson* (1991), 65 Ohio App.3d 800, 585 N.E.2d 502.

In a case which is strikingly similar to this matter, the Court of Appeals for Ross County got right to the heart of the matter in *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 619 N.E.2d 469, where the court held:

"The record in this case makes it clear that Park wanted appellant to have no part in raising their daughter. She neither requested child support during Rairdon's minority nor did she establish any visitation schedule for appellant. To comply with Park's stated wishes, appellant did not try to contact either mother or daughter. All contact was initiated by Park or Rairdon. We view Park's failure to timely initiate a parentage action and request child support as a waiver of her right to support.

"Now, twenty years after her daughter's birth, Park requests retroactive child support. *The prejudice to appellant is patent.* While R.C. 3111.13 permits a trial court to award child support which might have been paid in the past, it cannot rewrite the past. Although there are child support arrearages, there are no 'visitation' or 'custody' arrearages after the child has grown to adulthood." (Emphasis added.) *Id.* at 184, 619 N.E.2d at 473.

The fact pattern in the case *sub judice* is far more egregious than the facts in *Park, supra.* In *Park,* at least the father was offered the opportunity to participate in the decisionmaking process, and made a conscious decision to acquiesce in the mother's wishes that he have no part in his child's life. In the instant matter, defendant simply had no way of even knowing that he was the father. Consider for the moment the mechanisms which were utilized at the beginning of this sordid state of affairs. The plaintiff-mother, with the assistance of the state of Ohio, had the defendant-father arrested at his parents' home in 1977, on a "warrant in bastardy," and the court at that time ordered blood tests, which were performed at the Cleveland Clinic. For reasons that are totally unclear from the record, that matter was dismissed for "failure to prosecute" in 1978, and the trial court has found that the plaintiff-mother "made little, if any effort to pursue the matter further until 1992, when she made application to Cuyahoga County Child Support Agency for assistance in establishing a child support order."

From this recitation of facts, it is readily apparent the mother could have and probably should have enforced her claim for child support at a time when it would have made a difference. For whatever reason, she did not, and it is clear she has waived her rights to child support by her own actions.

An important distinction must be made between the mother and the other plaintiff, the state of Ohio. While the state clearly has an interest in this matter, it is peculiar indeed that it has not sought compensation in this matter. The trial court granted a monetary judgment to the mother and child only. It is well settled that the doctrine of laches will not apply to the state, for obvious reasons,

but that concept is of but passing interest in this matter, since the state apparently never sought compensation in this matter as reflected by the final judgment entry. The final judgment entry in this matter does not award one thin dime to the state of Ohio.

For all the foregoing reasons, I would reverse the trial court's judgment and send the parties on their way to live separate and apart as they have for the past twenty years.