OPINION
This is a timely appeal from a judgment of the Jefferson County Court of Common Pleas denying Hennie Lou Terry's ("Appellant") petition for child support owed for the period between June of 1983 and October of 1988 in the amount of $18,849.50. The trial court adopted the magistrate's conclusion that the equitable doctrine of laches barred Appellant's claim. For the reasons that follow, this Court affirms the judgment of the trial court.
The parties to this matter were divorced on July 20, 1982. Three children, Pamela, Darlene and Richelle Terry, were born during the course of the marriage. All three were minors when the couple split up. Appellant received permanent custody of Pamela and Darlene, while the court awarded custody of Richelle to Richard Lee Terry ("Appellee").
Appellee was directed to pay child support to Appellant for Pamela and Darlene in the amount of $300.00 per month. The record indicates that Appellee complied with the terms of the child support order until 1983 when he left his job at Coppers Chemical Company. The divorce decree also included a withholding order, so child support money was, at least initially, taken directly from Appellee's paycheck. (Tr. p. 15).
Almost immediately after the divorce, the minor Darlene went to Florida to live with Appellant's sister and her husband. (Tr. p. 26). About one year later, the other minor, Pamela, joined her sister in Florida. (Tr. p. 27). According to Appellant, she was forced to send the girls to live with their aunt because Appellee failed to ever pay support. (Tr. p. 31). Appellant's sister and her husband assumed guardianship over the girls. (Tr. p. 30).
Records reflect that at about the time that Pamela moved to Florida, Appellee's support payments stopped. Specifically, Jefferson County Child Support Enforcement Agency records indicate that Appellee made his last payment in June of 1983. In July of 1983, the Jefferson County Prosecutor's Office initiated contempt proceedings against Appellee for nonpayment of child support, but when service of the contempt petition was not obtained, no further action was taken.
In May of 1988, Darlene, the parties' youngest child, turned eighteen and graduated from high school. (Tr. p. 13). In 1990 or 1991, Appellant received notification from the Jefferson County Bureau of Child Support that she was owed back child support in the amount of $18,974.50. The Bureau also sought to ascertain whether Appellant intended to bring an action to collect the money owed her. (Tr. pp. 32-34). Appellant admits that she disregarded the Bureau's letter.
In fact, Appellant took no steps to recover the back child support until 1999. (Magistrate's Findings and Recommendations, Feb. 5, 2001). She states that she did so then only because three of her grandchildren were now living with her and she needed the extra money to care for them. (Tr. p. 38, Magistrate's Findings and Recommendations, Feb. 5, 2001).
On January 18, 2001, the matter proceeded to a hearing before a magistrate who recommended that the Jefferson County Child Support Enforcement Agency modify its records to reflect no arrearage. (Magistrate's Findings and Recommendations, Feb. 5, 2001). The magistrate concluded that because Appellant had allowed so much time to elapse on her claim for the back child support — 18 years — laches barred her claim.
The trial court overruled Appellant's timely objections to the Magistrate's Report. In doing so, the trial court agreed that laches applied in this case and, under that doctrine, Appellant was estopped from pursuing her back child support claim. (Judgment Entry, April 11, 2001). Appellant filed her notice of appeal from that decision on April 23, 2001.
Appellant's assignments of error allege:
 "THE TRIAL COURT ERRED WHEN IT RULED THAT PLAINTIFF-APPELLANT WAS ESTOPPED FROM PURSUING THE COLLECTION OF CHILD SUPPORT ARREARAGES BASED UPON THE APPLICATION OF THE DOCTRINE OF LACHES IN THE CASE AT BAR."
 "THE TRIAL COURT ERRED WHEN IT GRANTED JUDGMENT EXCUSING DEFENDANT-APPELLANT/OBLIGOR FROM THE PAYMENT OF HIS CHILD SUPPORT OBLIGATION AND ARREARAGES IN THE AMOUNT OF $18,849.50."
Appellant's two assignments of error are intertwined and will be addressed together. Appellant maintains that laches should not bar her claim for back child support. Appellant stresses that Appellee had a financial responsibility to support his two daughters until they reached their majority and that he shirked that responsibility. Appellant argues that allowing Appellee to escape that obligation unjustly enriches Appellee in the amount of $18,849.50. Such a result, Appellant claims, contravenes public policy and impugns the integrity of the entire child support system.
Issues of child support are reviewed on an abuse of discretion standard. Jefferson County Child Support Enforcement Agency v. Babel
(Sept. 8, 1998), Jefferson App. No. 97-JE-13, unreported, citing generally, Booth v. Booth (1989), 44 Ohio St.3d 142, 144. A trial court's decision to apply the doctrine of laches is similarly not reversible absent an abuse of discretion. Payne v. Cartee (1996), 111 Ohio App.3d 580,590. An abuse of discretion is more than just an error in judgment. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Booth v. Booth (1989), 44 Ohio St.3d 142, 144; andBonacci v. Bonacci (Sept. 7, 1999), Belmont App. No. 97 BA 60, unreported.
After a thorough review of the record, this Court cannot find, given the particular facts presented by this case, that the trial court abused its discretion in adopting the magistrate's conclusion that laches foreclosed Appellant's support claim.
Laches is the failure to act on a right or claim which, due to the passage of time and other circumstances, causes undue prejudice to the adverse party. It therefore operates as a bar to the pursuit of that claim. Badger v. City of Steubenville (June 12, 1992), Jefferson App. No. 91 JE 11, unreported, citing Black's Law Dictionary, p. 787. Whether laches will foreclose a particular claim turns on the unique factual circumstances of each case. Shepherd v. Shepherd (April 10, 2000), Jefferson App. No. 97 JE 16, unreported.
Signifying a delay independent of statutory time limitations, laches is intended to remedy material prejudice arising from unreasonable and unexplained delay in bringing an action. Connin v. Bailey (1984),15 Ohio St.3d 34, 35. Accordingly, laches will properly bar an action where it can be shown that: 1) the delay caused a loss of some evidence which would be helpful to the opposing party; or, 2) during the delay, the position of the opposing party undergoes a change that probably would not have occurred absent the delay. State ex rel. Donovan v. Zajac
(1998), 125 Ohio App.3d 245, 250; citing, Huntington Natl. Bank v.Battaglia (Mar. 25, 1994), Portage App. Nos. 92-P-0100 and 92-P-0101, unreported.
In Connin, supra, the court held that laches did not bar a mother's efforts to enforce a 35-year-old child support order against her recently-deceased former husband. The court reached this conclusion because the mother demonstrated that she consistently attempted to collect the court-ordered support. She only abandoned her efforts after it became obvious that they were fruitless, and were causing her to sink deeper into an already deteriorating financial situation. Under the circumstances, the court concluded that the mother had not acquiesced to her former husband's failure to pay support and the lengthy delay was reasonable. Id.
In stark contrast to the facts depicted in Connin, the record in the instant case reflects that Appellant sat on her child support claim for eighteen years. When the support payments stopped in July of 1983, it was the prosecutor's office, not Appellant, who sought to do something about it by initiating contempt proceedings. When those proceedings were abandoned after the prosecution ran into difficulty serving Appellee, Appellant did nothing to resurrect those efforts. Instead, Appellant took no action on the case until 1999. (Magistrate's Findings and Recommendation, pp. 1-2).
In the interim, though, the record is clear that Appellee remained involved in his family's life, maintaining contact with Appellant and the couple's children. (Tr. pp. 30, 43-44). Appellant was clearly aware of Appellee's whereabouts during the years that elapsed. In fact, during the entire period for which Appellant seeks child support, she resided in the home of Appellee's mother. (Tr. pp. 29-30). Accordingly, had Appellant been inclined, she could have easily commenced an action to secure Appellee's compliance with the support order long before 1999.
Had Appellant filed her claim in a more timely manner, Appellee would have been in a better position to refute it. While Appellant maintains that the application of the laches doctrine unjustly enriches Appellee, Appellee vigorously disputes that Appellant is even owed support.
In the original divorce decree, the trial court ordered that child support payments would be withheld automatically from Appellee's payroll check. According to Appellee, child support payments were subtracted from his wages for the first year after the divorce and discontinued when he left his job. By that time, both Darlene and Pamela had relocated to Florida. He claims that at this point, he was told by the Bureau of Child Support that he no longer needed to pay. This claim is corroborated in part by the fact that the prosecutor's office did not begin contempt proceedings to obtain support until July of 1983, about one month after Appellee says he left his job. This claim contrasts dramatically with Appellant's assertion that she was forced to send the girls to live with her sister because she had never received a single payment from Appellee.
Due to the extraordinary passage of time, Appellee would have difficulty presenting his defense. Any records of payment would undoubtedly be difficult if not impossible to retrieve. Appellee would not be able to produce his Bureau witness, who supposedly told him he had no duty to further pay. It is questionable that Appellant would have records of her expenses in regard to the girls, or that her sister in Florida would have such records. This passage of time was caused or encouraged by Appellant. Even after the Bureau of Child Support reminded Appellant of her dormant child support claim in 1990 or 1991, she allowed the claim to languish for another eight years. According to Appellant, the girls were grown at that point and she had moved on to a new relationship. (Tr. pp. 32-35). Not until 1999, and only then because she needed the money to help support her grandchildren, did she attempt to rejuvenate her claim for back child support. The record reflects that Appellant took a consistently apathetic approach to the exercise of her rights, justifying the court's use of the equitable doctrine of laches to bar her claim.
In resolving that laches properly applied to this case, it is important to note that this Court in no way intends to convey that a parent can avoid child support obligations, then use the passage of time to erase them. The facts of this case are unique. This Court has also not lost sight of the fact that the true victims in this case are the couple's children. Neither party to this matter has approached the dispute with entirely clean hands. Appellee's failure to pay child support is matched by Appellant's baffling delay in seeking to enforce the support order, even after she claims she was "forced" to send her children to Florida because of the failure of support.
The remarkable delay in the institution of Appellant's claim, the prejudice to Appellee as a result of the delay, and the fact that there is considerable debate concerning whether Appellant may even be entitled to the support she seeks, prompts this Court to conclude that the trial court did not abuse its discretion by adopting the magistrate's recommendation that laches bars Appellant's child support claim. Accordingly, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
Vukovich, P.J., concurs in judgment only.