{¶ 26} On this appeal from an order of Probate Judge John E. Corrigan that approved a decision of Magistrate Charles T. Brown, I dissent because the majority ignores both statutory mandates and the undisputed fact the judge had no jurisdiction to appoint Richard Koblentz as guardian of Susan Muehrcke's estate.
 {¶ 27} The majority has left out these relevant facts: Following his injury, Robert Muehrcke settled with the tortfeasor for her policy limits of $50,000 and, eventually with his own automobile liability carrier for about $2,500,000 in underinsured motorist coverage. In July 2000 Muehrcke, his wife, Laura, and their then seven year-old daughter, Susan, brought an action against the Indiana Mutual Insurance Company ("Indiana")[1] asserting, among others, a loss of consortium[2] claim by the child arising out of her father's injuries. A jury verdict awarded Susan $500,000, or 4.6% of the total verdict of $10,877,252, but the parties settled for the policy limits of $3,000,000. Claims for bad faith, for prejudgment interest and attorney fees were settled for an additional $2,000,000.
 {¶ 28} In July of 2001, Indiana and the Muehrckes arrived at an agreement to value Susan's claim at $50,000 pending probate court approval. In her October 2001 application to be appointed as guardian of Susan's estate, Mrs. Muehrcke attached a copy of an irrevocable trust in excess of $100,000 that had been established in 1993 for the benefit of her daughter, and she requested a limited guardianship "[i]f the court deems it necessary to protect and successfully invest proceeds of a personal injury settlement."[3] She also filed an application to settle the claims of a minor for $5,000.[4]
 {¶ 29} While there is no record of any hearing on the motions, it appears the magistrate continued the matter until December 12th, 2001. On that date it appears that the details of insurance payments were discussed, Mrs. Muehrcke asserted that she and her husband could adequately provide for their daughter, she orally amended her motion to propose approval of a $50,000 settlement, urged that any award be modest because of her belief that at age eighteen her daughter should not be entrusted with a large sum of money, and promised that if the probate court advised her to obtain a settlement in excess of $50,000 that she would take whatever steps were necessary, including suing her husband, their lawyer and the insurance company, to obtain that amount.[5] Mrs. Muehrcke then filed a brief in support of her contention that, in light of the total attorney fees and case expenses, approval of a $50,000 settlement was reasonable.
 {¶ 30} In his January 15, 2002 decision, the magistrate found that, while Mrs. Muehrcke suggested that her daughter receive only $50,000, that she presumably should have $4.6% of the $5,000,000 total, or $230,000. He found Mrs. Muehrcke to be "unsuitable" because her monetary claims were in conflict with the child's. He recommended denial of her application to be appointed guardian and dismissal of her motion to settle the child's claim, while further recommending the appointment of an independent guardian who would file a new application to settle the claim.
 {¶ 31} Objections to the magistrate's decision were overruled and judgment entries documented the denial of Mrs. Muehrcke's applications. On May 15th, 2002, Richard S. Koblentz, both as applicant and his own attorney, moved to be appointed the guardian of Susan Muehrcke's estate and, when he posted a $25,000 bond the next day, purportedly was issued letters of appointment. The record, however, does not show a signed or journalized entry recording the appointment, nor does it show that notice or time provisions, mandated by R.C. 2111.04, were satisfied.
 {¶ 32} On appeal Mrs. Muehrcke contends it was an abuse of discretion and a violation of due process to reject her guardianship application without giving her an opportunity to address the court's concerns and to cure any perceived defects. Koblentz, purportedly as appellee, counters that she had the opportunity to explain her contentions at the December hearing, that the probate court has broad discretion in appointing guardians and is required to act in the best interests of the minor. He supports the denial of her application by comparing her suggested settlement of $50,000 or less with the $230,000 suggested by the magistrate, or even the $102,866 identified by Mrs. Muehrcke as 4.6% of the net proceeds of the $5,000,000 settlement/award.
 {¶ 33} Because there is no evidence to support the decision(s), the majority author avoids the issue of identifying any and propounds the bizarre proposition that a probate judge has totally unfettered discretion, need not abide by statutory mandates, and essentially is immune from reversal by a sycophantic appellate panel. Instead of examining the merits of Mrs. Muehrcke's application, he relies upon a case that, itself, misapplies its own authorities.
 {¶ 34} Although the husband and wife are joint natural guardians of both the persons and the estates of their minor children[6] and each may prosecute an action on behalf of a minor child as a next friend,[7]
they have no authority to release a minor's claim once it has arisen.[8]
Any settlement on the child's behalf must be approved by a court, but this does not mean that approval must be sought by the guardian of the estate, nor does it mean that approval must be sought in the probate court.[9]
 {¶ 35} Because R.C. 2101.24 does not grant the probate court exclusive jurisdiction over the settlement of claims of a minor, if the matter is pending or judgment obtained in a common pleas court, the general division judge, under R.C. 2305.01, has concurrent jurisdiction and can approve and enforce the minor's settlement.[10] The child's parent or next friend must then seek approval in the probate court only for appointment of a guardian or waiver of a guardian's necessity.[11]
After appointment the guardian can then take control of the previously approved settlement funds on the child's behalf. In this case, however, Mrs. Muehrcke simultaneously sought a guardianship and approval of the settlement in the probate court, even though the settlement could have been approved by the common pleas judge prior to seeking the guardianship.
 {¶ 36} Before continuing I must note that Koblentz has no authority to act in this appeal, even though he purports to be both the guardian and attorney for the guardian of Susan's estate. The record does not include a signed, journalized entry showing his appointment and, even if it did, the appointment was beyond the judge's jurisdiction because the notice provisions of R.C. 2111.04 were not followed. The statutory language is unambiguous and is to be applied as written. Notice is a jurisdictional requirement,[12] and where the record fails to reveal that proper notice was served as required, such failure is a violation of the due process clause of the Ohio Constitution.[13] Koblentz's appearance and argument should be stricken.
 {¶ 37} In addressing whether Mrs. Muehrcke's guardianship application was inappropriately denied, the majority accepts Koblentz's reference to In re Estate of Bednarczuk,[14] in which a divorced mother's last will and testament devised her estate to her son and named her father to be guardian of that estate. The court upheld the mother's testamentary wishes over the objection of the child's divorced father, who claimed a priority right to control the devised estate. Such circumstances are distinguishable because the parents here are married and share a common desire with respect to their child. Furthermore, inBednarczuk the child's grandfather was named as guardian of the estate rather than a stranger selected and appointed by the probate judge.
 {¶ 38} I do not doubt that in some circumstances it is appropriate to name an independent guardian for a child's estate even where the parents stand willing to serve in that capacity. However, there is a heavy presumption in favor of following the parents' wishes in naming a guardian, and thus a parent's desire to serve as guardian should be accorded that same respect.[15] There is also a presumption in favor of maintaining a single person as guardian of the estate,[16] and the magistrate failed to explain why it was necessary to name a separate guardian and risk dissipation of the ward's assets through conflicts between the guardians resulting in increased and multiple attorney's fees.
 {¶ 39} The majority opinion omits citations relied upon inBednarczuk because the authority does not support the majority's result. The Bednarczuk court stated that a biological parent had a paramount right of custody for his child and then, allegedly under the authority ofWeiand v. Akron,[17] stated that "[t]he law does not recognize a parallel entitlement of a parent to manage a minor's finances."[18] This is utter nonsense because Weiand, a common pleas general division case, determined only that an adult may disavow a contract made during minority with no reference whatsoever to whether a parent has a paramount right, as against a stranger, to be named guardian of his child's estate.Weiand states nothing more than the general proposition, stated earlier, that a parent has no authority to release a child's claim once it has arisen.[19] Reliance upon Bednarczuk to deny Mrs. Muehrcke her priority to serve as guardian of her child's estate is misplaced.
 {¶ 40} The majority relied upon the magistrate's belief that Mrs. Muehrcke was "unsuitable" to be the guardian of her daughter's estate because of her purported monetary conflict of interest. However, the determining factor in the appointment of separate guardians is the best interest of the child,[20] not a parent's "unsuitability." In an attempt to rehabilitate the magistrate's incorrect finding that Mrs. Muehrcke was "unsuitable" under In re Estate of Henne,[21] the majority opinion, without explanation, retreats behind the "broad discretion" of the probate court. However, no judge has discretion to make an error of law,[22] and the magistrate's reliance on Henne, which concerns the issuance of letters testamentary under R.C. Chapter 2113, is legally untenable because the magistrate failed to address the presumptions stated in R.C. 2111.06, 2111.08, 2111.12, and 2112.121.
 {¶ 41} The idea that a parent has a paramount entitlement to act as guardian of a minor child's person, but not as guardian of the estate, is contrary to any reasonable assessment of parental rights. If a parent is presumptively capable and willing to accept responsibility for a child's physical well-being, it is ridiculous to believe the same presumption does not apply to the child's financial affairs.[23]
Moreover, this presumption of parental capability should not be rebutted except upon clear and convincing evidence.[24] In the absence of this "parallel entitlement" any stranger could file, for any reason or no reason, an application to be named guardian of a child's estate and have an equal right to serve in that capacity despite the child's residence in a home with his natural parents.
 {¶ 42} The release executed by the Muehrckes, with respect to Susan's claim, was subject to probate court approval and was not binding absent that imprimatur.[25] The parents had previously established an irrevocable trust for Susan then valued in excess of $100,000 and, because the insurance settlement money would be available to their child when she reached age eighteen, had a justified concern about the effect unfettered access to a large sum of money might have upon her. A review of the application to settle the claim, however, reveals that the sections concerning the amount of Susan's estate were left blank, indicating that Mrs. Muehrcke had come to the court for advice about a proposed settlement after a complete disclosure about all claims and money tendered. Indeed, the magistrate's decision noted that she "was not sure what portion of the settlement her daughter should receive," and documented her intention to take whatever steps were necessary to obtain a settlement above $50,000 if the court so advised.
 {¶ 43} While it is true that the parents' share would be modestly reduced if the child's share of the $5,000,000 total recovery, less attorney fees and case expenses, exceeds $50,000, there is no basis for finding the mother unsuitable or to find that appointment of an independent guardian of the estate is in the child's best interest. The total net recovery is undisputed and fixed at $2,236,238.42. While the magistrate contended that the child was entitled to $230,000 or 4.6% of the gross, he neglected to take into consideration the attorney's fees and case expenses allowed under Loc.R. 71.2 of the Court of Common Pleas of Cuyahoga County, Probate Division.
 {¶ 44} He should have recommended a settlement of 4.6% of the net recovery, or about $103,000. The parents' portion would then be $2,133,238.42, a mere $53,000 reduction — hardly a sum that, in these circumstances, should cause a judge to determine that the parents have such an intractable conflict that they will betray their child. Under the magistrate's reasoning all parents and children are perpetually at odds because each mouthful of food that goes to the child represents one less morsel for the parent. Neither the magistrate nor the judge identified any reason that the parents might plunder their child's portion of the settlement once that amount was properly determined. Merely citing the fact that the parents and child must share from the same settlement funds, without more, is no reason to believe that the parents' will seek to thwart their child's interest.[26] Therefore, the magistrate not only committed legal error in applying the wrong standard, he abused his discretion in finding that the parents had an irreconcilable conflict when no evidence supported that conclusion. These errors were apparent on the face of the magistrate's decision and the judge should have sustained the objections.
 {¶ 45} Although Mrs. Muehrcke sought counsel as to the appropriate settlement amount for her daughter, neither the magistrate nor the judge advised her, she was denied the opportunity to comply with any directive and, although the issue was whether the settlement offer was appropriate, she was arbitrarily stripped of her priority right to manage her child's estate for the next eight years in favor of the judge's personal appointee.
 {¶ 46} By statute Mrs. Muehrcke is the natural guardian of her daughter's estate and has priority to serve as legal guardian of that estate. The probate judge did not adhere to statutory directives that strongly favor the parents' decision as to who should be guardian of their child's estate, failed to advise her of what he believed would be an appropriate settlement, and prevented her from satisfying his concerns by proposing a larger settlement of the claim, despite her willingness to do so. Susan Muehrcke's best interests require that resolution of her claim be fair and that her estate not be dissipated by unnecessary guardian and attorney fees.
 {¶ 47} The majority has no justification for turning a blind eye on the invalid appointment of Koblentz and the cavalier treatment of Mrs. Muehrcke. I would reverse this travesty.
[1] Apparently pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins.Co., 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.
[2] Gallimore v. Children's Hosp. Med. Ctr., 67 Ohio St.3d 244,1993-Ohio-205, 617 N.E.2d 1052, paragraph two of the syllabus.
[3] Also attached was an explanation of the lawsuit and reasons why the parents hoped their child's claim could be settled for a nominal amount.
[4] If settled for less that $10,000 no guardianship is required under R.C. 2111.18 and Sup.R. 67.
[5] There was no record made of that hearing. The information is contained in the magistrate's decision.
[6] R.C. 2111.08.
[7] Civ.R. 17(B).
[8] Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 373,1998-Ohio-389, 696 N.E.2d 201; Hewitt v. Smith (Dec. 16, 1998), Lorain App. No. 97CA006987; see, also, Weiand v. Akron (1968), 13 Ohio App.2d 73,74-75, 42 O.O.2d 178, 233 N.E.2d 880 (parent had no authority to settle minor's claim against insurance company).
[9] Lunsford v. Gross (Aug. 30, 1985), Butler App. No. CA81-04-029.
[10] Id.
[11] Sup.R. 67, 68; R.C. 2111.18.
[12] In re Metzenbaum (July 31, 1997), Cuyahoga App. No. 72052.
[13] Horn v. Childers (1959), 116 Ohio App. 175, 181, 22 O.O.2d 34, 187 N.E.2d 402; Civ.R. 73(F).
[14] (1992), 80 Ohio App.3d 548, 609 N.E.2d 1310.
[15] R.C. 2111.12, 2111.121.
[16] R.C. 2111.06.
[17] 13 Ohio App.2d 73, supra.
[18] Bednarczuk, 80 Ohio App.3d at 552.
[19] Zivich, supra; Hewitt, supra.
[20] R.C. 2111.06.
[21] (1981), 66 Ohio St.2d 232, 20 O.O.3d 228, 421 N.E.2d 506.
[22] Rohde v. Farmer (1970), 23 Ohio St.2d 82, 89, 52 O.O.2d 376,262 N.E.2d 685.
[23] See, e.g., In re Estate of Antkowiak (1994), 95 Ohio App.3d 546,552, 642 N.E.2d 1154 (parent with physical custody, as natural guardian, is presumed to use support funds for child's benefit and to support the child out of her own assets).
[24] See, e.g., In re Hoffman (Dec. 22, 2000), Lake App. No. 99-L-199 (because of parent's paramount right, custody order is considered temporary unless clear and convincing evidence shows its intent to be permanent).
[25] Hewitt v. Smith, supra.
[26] In re Estate of Antkowiak, supra.